The Honorable Ronald B. Leighton

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
                    WESTERN DISTRICT OF WASHINGTON
9                              AT TACOMA

10   TEFERI ABEBE BIKILA, an individual;
     YETNAYET ABEBE BIKILA, an              No. 3:15-cv-05082-RBL
11   individual; TSIGE ABEBE, an individual;
     and YEWEBDAR W. GIORGESE, an
12   individual,
                                            **DEFENDANTS' MOTION FOR**
13                          Plaintiffs,      **SUMMARY JUDGMENT**

14          v.

15   VIBRAM USA, INC., a Delaware            NOTE ON MOTION CALENDAR:
     corporation, and VIBRAM FIVEFINGERS     May 13, 2016
16   LLC, a Massachusetts limited liability
     company,                               ORAL ARGUMENT REQUESTED
17
                            Defendants.
18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

## I.    INTRODUCTION AND RELIEF REQUESTED

In 2006, Defendants Vibram USA, Inc. and Vibram FiveFingers LLC (collectively, "Vibram") introduced a glove-like shoe that was called "FiveFingers" because each toe was separated as in a glove. The shoe attracted quite a following for use in various sports. In 2010, Vibram introduced a version specifically designed for runners and, after consultation with a trademark lawyer, named it "Bikila" in honor of Abebe Bikila, an Ethiopian who won the Rome Olympics in 1960 running barefoot. The plaintiffs had constructive knowledge of Vibram's use of the word in 2010 and actual knowledge by 2011 when they consulted counsel about their rights, if any. They did not bring this suit until February 2015, by which time their records and emails had largely disappeared, Vibram's witnesses' memories had dimmed, and Vibram had invested financially in the advertising and promotion of its "Bikila" shoes. Therefore, plaintiffs' claims are barred, in whole or in part, both by the doctrine of laches and by the applicable statutes of limitations.

This suit should also be dismissed because plaintiffs do not own the claims they assert. Abebe Bikila had no property rights in his name under Ethiopian law so, even if the plaintiffs inherited other property from him, they did not inherit the rights they assert in this suit. Further, they have created no common law rights because they have never used the name in commerce in the United States. Vibram therefore respectfully requests that the Court enter summary judgment and dismiss plaintiffs' claims.

## II.    RELEVANT FACTS

### A.    Vibram's Registration and Use of its Bikila Trademark.

Vibram is a small company based in Massachusetts that, at the time relevant to this lawsuit, employed approximately 10-12 people. Declaration of Joanne M. Hepburn ("Hepburn Decl."), Ex. A (Post Dep., 232:15-233:17). Vibram's signature consumer product is the Vibram FiveFingers, a shoe style that is intended to mimic the experience of being barefoot. Declaration of Christopher Allen ("Allen Decl."), ¶ 2. The FiveFingers shoes are readily

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 1
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

identifiable, as they are shaped like a glove for the foot, with individual sections for each toe. *Id*. The launch of the first FiveFingers shoe in 2006 coincided with an increase in the popularity of "barefoot running," which often involves running in minimalist style shoes, and Vibram was aware that customers were purchasing FiveFingers shoes for running. Hepburn Decl., Ex. A (Post Dep., 74:8-23); Ex. B (von Conta Dep., 15:3-9).

In 2009, Vibram designed a new FiveFingers shoe specifically intended for running. In anticipation of releasing this FiveFingers shoe, Vibram's then-president and CEO, Tony Post, a marathon runner himself, identified "Bikila" as a potential name for the new shoe. Hepburn Decl., Ex. A (Post Dep., 42:17-43:12). Mr. Post wanted to honor Abebe Bikila, who he considered to be "a great, though somewhat obscure runner from Ethiopia." *Id.*, Ex. Y. Mr. Post knew Abebe Bikila won the 1960 Olympic marathon running barefoot and wanted to pay tribute to his achievement, even though few people recognized the name. *Id.*, Ex. A (Post Dep., 42:17-43:12; 44:13-45:19; 48:3-8; 119:4-22). (All FiveFingers shoes were branded "Vibram" and "FiveFingers" and those marks are placed on the shoes, but each version has its own name that does not appear on the shoe. *Id.* (Post Dep. 38:24-39:23)). Abebe Bikila was paralyzed in a car accident in 1969 and died from resulting complications in 1973. Second Amended Complaint [Dkt. 34], ¶ 7. Thus, Abebe Bikila died over 35 years before Vibram first considered using the name Bikila for its running shoes.

Prior to using the Bikila name, Mr. Post, who is not a lawyer, sought advice from outside legal counsel because Vibram had no in-house legal function. Hepburn Decl., Ex. A (Post Dep., 240:10-21). He contacted Curt Krechevsky at Cantor Colburn LLP. Mr. Krechevsky, a 1982 Harvard Law School graduate, has over 30 years of trademark experience, and is the Chair of the Trademark and Copyright Department at Cantor Colburn LLP, an intellectual property law firm. *Id.*, Ex. C. Mr. Krechevsky's experience includes 12 years at Reebok International, Ltd., where, as Assistant General Counsel and Trademark Counsel, he was responsible for all trademark and related legal matters involving the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 2
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

company and its subsidiaries worldwide. *Id.* Mr. Krechevsky is a former member of the board of directors of the International Trademark Association ("INTA"), and currently serves as Co-Chair of the INTA Presidential Task Force on Brands and Innovation and as a member of the INTA Right of Publicity subcommittee. *Id.* He has received numerous honors, including being selected as one of Boston's "Best IP Lawyers" and has lectured at Harvard Law School, Harvard Business School, Boston University School of Law, and Tufts University. *Id.*

Mr. Post provided Mr. Krechevsky with background information on Abebe Bikila, including a link to Abebe Bikila's Wikipedia page, and asked, "Can we call this new shoe the Bikila? Is it possible to get a TM?" Hepburn Decl., Ex. Y. Mr. Krechevsky conducted a "full search" of the potential Bikila trademark and concluded that the mark was "available with reasonable risk for use and registration in connection with" advertising and promoting Vibram's new FiveFingers shoe. *Id.*, Ex. D. Mr. Post relied on Mr. Krechevsky's advice that the name was available and proceeded to use "Bikila" for the FiveFingers running shoe and register the Bikila trademark. *Id.*, Ex. A (Post Dep., 59:10-17; 86:18-87:1; 241:10-21).

On May 19, 2009, nearly six years before this lawsuit was filed, Vibram applied for registration of the Bikila trademark with the United States Patent and Trademark Office ("PTO") as a standard character mark.[1] Hepburn Decl., Ex. E. This application was publicly available via the PTO's website. *Id.*, Ex. F (stating that the Trademark Electronic Search System may be used "to conduct a free online search of the PTO database," including pending applications). Pursuant to its standard procedures, the PTO published the trademark for opposition in the Official Gazette on September 29, 2009. *Id.*, Ex. G. The purpose of publishing the application in the Official Gazette is to alert all interested parties to the application, so that any objections can be made in a timely fashion. *Id.*, Ex. H. Access to the Official Gazette is free and available on the PTO's website. *Id.*

---

[1] The original registrant was defendant Vibram FiveFingers LLC. Hepburn Decl., Ex. N. The trademark was later assigned to its current owner, Vibram S.p.A., an Italian corporation, which licenses defendants' use of the trademark. *Id.*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 3
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Plaintiffs claim that, at the same time Vibram filed the application for the Bikila trademark, they were engaged in regular and thorough monitoring of unauthorized uses of the Bikila name. Hepburn Decl., Exs. I-K (Responses to Interrogatory No. 3 (claiming that, since 2003 or 2004, plaintiffs were "using the Internet to periodically monitor the use of Abebe Bikila's name, likeness, and intellectual property rights.")); Ex. L (T. Bikila Dep., 39:25-42:22 (claiming biweekly Internet searches for Abebe Bikila's name from 2009 to the present)). Despite this alleged careful monitoring, plaintiffs did not object to Vibram's trademark registration. Hepburn Decl., ¶ 14, Ex. M. With no opposition received, the PTO registered the Bikila trademark on its principal register on July 20, 2010. *Id.* Vibram released the FiveFingers Bikila running shoes in April 2010. Allen Decl., ¶ 3. Again, despite their asserted monitoring, plaintiffs allegedly failed to notice the nationwide release and promotion of the FiveFingers Bikila shoes.

**B.      Plaintiffs Discovered Vibram's Use of the Bikila Trademark by January 2011.**

Plaintiffs now[2] admit to obtaining actual knowledge of Vibram's use of the Bikila trademark within nine months of the release of the FiveFingers Bikila shoe. On January 10, 2011, Plaintiff Yetnayet Bikila sent an email to Plaintiff Teferi Bikila telling him "pL Look this website disc with Roza[3] and with your Loyer about the situation. The website: vibram-fivefingers-bikila." Hepburn Decl., Ex. O.

Within a week of receiving the January 10, 2011 email, plaintiffs contacted lawyers to discuss suing Vibram. Hepburn Decl., Ex. L (T. Bikila Dep., 43:9-22). For reasons unknown to Vibram, plaintiffs did not retain any of the lawyers they contacted in early 2011. Plaintiffs claim that they continued to look for lawyers from 2012 to 2014, but this search did not involve contacting any lawyers; they merely discussed the idea of getting a lawyer amongst

---

[2] Plaintiffs initially stated under oath that they did not learn about the FiveFingers Bikila shoes until October 2014. *See* Hepburn Decl., Exs. I-K (Responses to Interrogatory No. 5). Plaintiffs were forced to retract these false statements when the email surfaced showing that plaintiffs discussed potential legal claims against Vibram related to the FiveFingers Bikila shoes in January 2011, more than four years before they filed their lawsuit. *Id.*, Ex. O.
[3] Roza is a name used by Tsige Abebe. Hepburn Decl., Ex. P (Y. Bikila Dep., 41:3-4).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 4
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

themselves. *Id.* (T. Bikila Dep., 43:9-45:19; 47:9-49:4). They also made no effort to contact Vibram to object to the use of the Bikila trademark. Hepburn Decl., Exs. I-K (Responses to Interrogatory No. 6). The first time Vibram learned of plaintiffs' objection was when plaintiffs filed their complaint in February 2015, nearly six years after Vibram applied for the trademark, nearly five years after Vibram launched the FiveFingers Bikila shoe, and more than four years after plaintiffs now admit they discovered Vibram's use of the Bikila name.

**C.    Plaintiffs' Delay in Bringing This Case Has Caused Prejudice to Vibram.**

**1.    Plaintiffs Misplaced, Destroyed, or Lost Access to Relevant Documents During the Extended Delay in Pursuing Their Claims.**

During the nearly six years that plaintiffs failed to raise any objection to Vibram's use of the Bikila trademark, plaintiffs made no effort to preserve documents relevant to this case. Plaintiffs made no effort to retain access to multiple email accounts that they actively used during the relevant time period. For example, Plaintiff Tsige Abebe used a Yahoo email account from 2010 to 2012, the period during which Plaintiffs discovered that Vibram was selling the FiveFingers Bikila shoes, that she can no longer access and that was not searched for responsive documents in this case. Hepburn Decl., Ex. Q (Resp. to Interrogatory No. 12). Plaintiff Yetnayet Bikila has two email accounts that were used during the time period when Vibram was selling the Bikila shoes that he can no longer access and that were not searched for responsive documents in this case. *Id.*, Ex. R (Resp. to Interrogatory No. 12). He admits that he used at least one of these accounts for communicating with people who were interested in licensing Abebe Bikila's name. *Id.*, Ex. P (Y. Bikila Dep., 123:2-124:10). He also admits to communicating with the other plaintiffs using at least one of these accounts. *Id.* Plaintiff Teferi Bikila also has an email account that he used during the time period when Vibram was selling the Bikila shoes that he can no longer access and that was not searched for responsive documents in this case. *Id.*, Ex. S (Resp. to Interrogatory No. 12). Vibram would have had access to potentially helpful documents in these email accounts had plaintiffs brought their lawsuit in a timely manner.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 5
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Additionally, plaintiffs admit to losing or destroying multiple relevant documents. For example, plaintiffs allege that they entered into a contract with someone in the United States to make a film about Abebe Bikila, but they apparently lost the contract between the time they learned of the FiveFingers Bikila shoe and the time of filing their complaint. Hepburn Decl., Ex. L (T. Bikila Dep., 67:12-68:9 (contract lost within last three or four years)). Although the film was never made, it would have been relevant to see the proposed payment arrangements and the scope of the alleged license, particularly because plaintiffs rely on this film as an example of commercial use within the United States. Hepburn Decl., Exs. I-K (Responses to Interrogatory No. 4). Plaintiff Tsige Abebe no longer has any documentary evidence of her alleged book sales in Atlanta in 1996, the only time plaintiffs have allegedly conducted any commercial activity involving Abebe Bikila in the United States. Hepburn Decl., Ex. T (T. Abebe Dep., 49:2-17). Plaintiffs also took approximately six months to find and produce the email that revealed, contrary to their prior statements under oath, that they knew about the FiveFingers Bikila shoes shortly after their release. *Compare* Hepburn Decl., Ex. I-K (Responses to Interrogatory No. 5) (claiming October 2014 discovery of Vibram's use) *with id.*, Ex. O (email evidencing knowledge of use in January 2011). It is unknown what other helpful emails have not yet been located by plaintiffs.

### 2. Most Vibram Witnesses Are No Longer With the Company and Cannot Recall Key Details Related to This Case.

As a result of plaintiffs' delay, most defense witnesses have little recollection of relevant facts, are no longer Vibram employees, and are not readily available to assist Vibram. In March 2016, plaintiffs sought to depose four Vibram witnesses: Tony Post, Georgia Shaw, Peter von Conta, and Michael Martin. Only Mr. von Conta, who played a minor role, remains employed by Vibram. Allen Decl., ¶ 6; Hepburn Decl., ¶ 3. The Vibram witnesses repeatedly asserted a lack of recollection of relevant facts during their depositions. For example, Mr. Martin, who handled sales during the relevant time period, was unable to recall information approximately 50 times during his deposition. Hepburn Decl., ¶ 27. Ms. Shaw, Vibram's

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 6
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

marketing manager during the relevant time period, was unable to recall information more than 150 times during her deposition. *Id.* And Mr. Post, Vibram's former president and CEO, was unable to recall information more than 120 times during his deposition. *Id.* Had plaintiffs timely asserted their claims, these individuals would still be employees and these events would be fresh in their minds, enabling Vibram to better defend itself.

Plaintiffs' counsel also spent significant time during depositions addressing a microsite used to market Vibram FiveFingers shoes called www.youarethetechnology.com, which is apparently a key part of plaintiffs' theory of the case. The website, which was created and hosted by third parties, is no longer active and, due to the passage of time, Vibram has been unable to obtain an electronic version of the site as it actually appeared online. Hepburn Decl., ¶ 28. This has further prejudiced Vibram's defense.

### 3. While Plaintiffs Sat on Their Rights, Vibram Invested in its Trademark.

During the nearly six years between Vibram's filing of its trademark application and plaintiffs' filing of this lawsuit, plaintiffs failed to raise any objection to Vibram's use of the Bikila trademark. Had they done so, this entire case could have been avoided. Mr. Post repeatedly testified that, if there had been an objection to the Bikila trademark, Vibram would not have used the mark. Hepburn Decl., Ex. A (Post Dep., 62:1-63:20).

In the absence of any objection, however, Vibram not only invested in the original FiveFingers Bikila shoe, but went on to release additional shoes that used the Bikila name: the FiveFingers Bikila LS in Spring 2011, the FiveFingers Bikila EVO in Spring 2014, and the FiveFingers Bikila EVO WP in Fall 2014. Allen Decl, ¶ 3. These shoes were named, promoted, and advertised in reliance on the fact that Vibram already owned the Bikila trademark. Hepburn Decl., Ex. U (Martin Dep., 22:24-23:22). Because plaintiffs never contacted Vibram to object to the trademark, Vibram could not have had any knowledge of plaintiffs' objection when it named and marketed the Bikila LS, the Bikila EVO, or the Bikila EVO WP. Vibram incurred marketing and advertising expenses to promote each of these

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 7
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Bikila shoes. Allen Decl, ¶ 3. Vibram also registered the Bikila trademark in additional countries, incurring legal fees. *Id.*, ¶ 4.

**D.    Plaintiffs' Alleged Inherited Rights and the Ethiopian Civil Code.**

Against this backdrop of untimeliness and prejudicial delay, plaintiffs cannot even demonstrate that they have any property rights in the Bikila name. Plaintiffs allege that, pursuant to Articles 842 and 843 of the Civil Code of Ethiopia, certain personality rights were transferred from Abebe Bikila to plaintiffs when Abebe Bikila died intestate in Ethiopia in 1973.[4] Second Amended Complaint [Dkt. 34], ¶¶ 7, 12. Article 842 of the Civil Code of Ethiopia provides that a deceased's heirs are his children, who "each shall receive an equal portion of the succession." Declaration of Tewodros Meheret ("Meheret Decl."), Ex. A (Art. 842). Article 843 provides that, when a deceased has no descendants, his mother and father will be his heirs. *Id.* (Art. 843).

In relying on these provisions, however, plaintiffs miss the key point: if Ethiopian law did not provide Abebe Bikila with any personality or publicity rights in his name, plaintiffs could not have inherited any rights in his name from him. The Ethiopian Civil Code does not contain any provision providing personality rights in individuals' names. Meheret Decl., ¶¶ 2-4. Notably, the Ethiopian Rights of Personality do include the right to one's image, showing that the scope of personality rights was considered. *Id.*, Ex. B (Art. 27). However, neither the Civil Code nor any other provision in Ethiopian law creates personality rights or rights of publicity in an individual's name. Meheret Decl., ¶ 6.

The absence of any property right in a person's name is consistent with Ethiopia's patronymic naming convention. In Ethiopia, there are no "surnames," there are just names. The custom is that a child has a given first name, which is followed by the given first name of his or her father. Hepburn Decl., Ex. T (T. Abebe Dep., 17:18-18:5); *see also* Meheret Decl.,¶

---

[4] Vibram disputes that plaintiffs are the sole heirs of Abebe Bikila, and disputes that Plaintiff Giorgese was properly declared the heir of any rights of Dawit Bikila but, for purposes of this motion only, assumes that the four plaintiffs are the sole lawful heirs of Abebe Bikila and that they inherited his estate in equal portions.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 8
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

5, Ex. C (Art. 32-36). Plaintiff Tsige Abebe follows this tradition. Tsige is her given name and Abebe is her father's given name. As children, her brother's names were Teferi Abebe and Yetnayet Abebe, in keeping with custom, but, as adults, they have chosen to add their grandfather's given name to their names. *Compare* Hepburn Decl., Ex. V *with id.*, Ex. T (T. Abebe Dep., 18:6-9). If any of the plaintiffs have children, those children traditionally would not use "Bikila," the given name of their great-grandfather. As a result, a given name will typically fall out of use within a family after two generations.

**E.      Plaintiffs' Have Not Used the Name Bikila in Commerce In the United States.**

Because they did not inherit rights to Abebe Bikila's name under Ethiopian law, Vibram anticipates that plaintiffs may attempt to establish standing via common law trademark rights. However, plaintiffs do not use the Bikila name in commerce in the United States. Plaintiffs have sold no goods under the Bikila name in the United States. Hepburn Decl., Ex. P (Y. Bikila Dep., 109:5-20; 110:22-111:2). Plaintiffs have never licensed the Bikila name to any third party in the United States. *Id.*, Ex. T (T. Abebe Dep., 86:15-18). The closest plaintiffs have come to doing anything with the Bikila name in the United States was 20 years ago when Plaintiff Tsige Abebe alleges that she sold approximately 2,000 copies of her biography of Abebe Bikila at the 1996 Atlanta Olympics. *Id.* (T. Abebe Dep., 47:23-50:3). Other than the cover of the book itself and perhaps some word-of-mouth advertising, she did not actively advertise and promote the biography, and she has no records to support those alleged sales. *Id*.

### III.      AUTHORITY AND ARGUMENT

**A.      Summary Judgment Standard.**

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is required where the non-moving party "'fails to make a showing sufficient to establish the

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 9
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quotations omitted). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

**B.      Plaintiffs' Lanham Act Claim Is Barred by the Doctrine of Laches.**

Plaintiffs' Lanham Act claim is barred in its entirety by the doctrine of laches because plaintiffs waited over five years after receiving constructive notice and four years after receiving actual notice of Vibram's use of the Bikila trademark to file their complaint. The equitable defense of laches bars the claims of a plaintiff who "with full knowledge of the facts, acquiesces in a transaction and sleeps upon his rights." *Danjaq LLC v. Sony Corp.*, 263 F.3d 942, 950-51 (9th Cir. 2001) (quoting *S. Pac. Co. v. Bogert*, 250 U.S. 483, 500, 39 S. Ct. 533, 63 L.Ed. 1099 (McReynolds, J., dissenting)). "The Ninth Circuit has found that District Courts may properly grant summary judgment on the basis of laches." *Eat Right Foods, Ltd. v. Whole Foods Mkt., Inc.*, No. C13-2174 RSM, 2015 U.S. Dist. LEXIS 63578, at * 5 (W.D. Wash. May 14, 2015) (citing *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 831 (9th Cir. 1991)). To obtain dismissal of plaintiffs' Lanham Act claim, Vibram must prove both (1) unreasonable delay by plaintiffs in bringing their lawsuit; and (2) prejudice to Vibram from the delay. *See Danjaq*, 263 F.3d at 951. Where, as here, a plaintiff files suit outside the statutory limitations period, there is a presumption that both elements are satisfied. *FLIR Sys. Inc. v. Sierra Media, Inc.*, 965 F. Supp. 2d 1184, 1203 (D. Or. 2013). Plaintiffs cannot overcome this presumption.

**1.   Plaintiffs Unreasonably Delayed in Bringing their Lawsuit.**

In determining whether there has been unreasonable delay, the Court first assesses the length of the delay, "which is measured from the time the plaintiff knew or should have known about its potential cause of action." *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 10
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

F.3d 829, 838 (9th Cir. 2002); *Danjaq*, 263 F.3d at 952. Next, the Court "decide[s] whether the plaintiff's delay was unreasonable. " *Id*.

Here, plaintiffs had constructive knowledge of their claims by 2010, when the FiveFingers shoes were released nationwide and the Bikila mark was registered on the principal register of the PTO. *See Fitbug Ltd. v. Fitbit, Inc.*, 78 F. Supp. 3d 1180, 1186 (N.D. Cal. 2015) (in determining when plaintiffs knew or should have known about a potential cause of action, the court may consider constructive knowledge). A nationwide product release with significant media coverage is sufficient constructive notice to trigger the laches clock. *Id.*, at 1187. Likewise, the Lanham Act provides that "[r]egistration of a mark on the principal register . . . shall be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072. Therefore, plaintiffs were on constructive notice of Vibram's use of the Bikila trademark no later than July 20, 2010, its registration date. Hepburn Decl., Ex. W.

In any event, it is now undisputed that plaintiffs had actual notice of Vibram's use of the Bikila trademark by January 10, 2011, when Plaintiff Yetnayet Abebe Bikila told Plaintiff Teferi Abebe Bikila about the "vibram-fivefingers-bikila" promotional website and encouraged him to discuss it with Plaintiff Tsige Abebe and their lawyer. *Id*., Ex O.

Next, the Court must determine whether it was reasonable for plaintiffs to wait more than five years after constructive notice and four years after actual notice to file their lawsuit. In conducting this inquiry, courts consider the statutory limitations period and presume that a plaintiff's claims are barred by laches "if <u>any part</u> of the claimed wrongful conduct occurred beyond the limitations period." *Jarrow*, 304 F.3d at 837 (emphasis added). Because there is no statutory limitations period in the Lanham Act, courts making a laches determination look to the limitations period for the analogous state law action. *Id.*, at 838.[5] The closest analogous

---

[5] The *Jarrow* court noted, without deciding, that it was possible that Congress intended laches to be the only time bar to Lanham Act claims. District courts have subsequently considered statute of limitations defenses to Lanham Act claims, with one specifically concluding that the various cases arising since *Jarrow* suggest that "a statute-of-limitations defense to Lanham

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 11
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

state law action in Washington is the common law tort of trade name infringement, which has a three year limitations period. RCW 4.16.080(2); *Eat Right Foods,* 2015 U.S. Dist. LEXIS 63578, at * 6. Thus, plaintiffs' delay is unreasonable as a matter of law if any part of the claimed wrongful conduct occurred prior to February 9, 2012 (three years before they filed their complaint).

Here, a substantial portion of the alleged wrongful conduct occurred prior to February 9, 2012. Plaintiffs base their claims, in significant part, on Vibram's 2009 application for the Bikila trademark, its 2010 release of the original FiveFingers Bikila shoes, and its alleged use of "the Bikila Trademark to market and sell shoes and clothing . . . ." Second Amended Complaint [Dkt. 34], ¶¶ 18-22. The peak of the popularity of the FiveFingers was in 2010 and 2011, meaning the majority of sales and promotion occurred prior to February 9, 2012. Allen Decl., ¶ 5. Accordingly, because part (indeed, most) of the claimed wrongful conduct occurred beyond the limitations period, and plaintiffs knew about Vibram's conduct during that period, there can be no material dispute that plaintiffs' delay was unreasonable as a matter of law. *Jarrow*, 304 F.3d at 837.

**2.   Vibram Was Prejudiced by Plaintiffs' Unreasonable Delay.**

Plaintiffs' unreasonable delay resulted in prejudice to Vibram. There are two primary forms of prejudice recognized in the context of a laches defense: evidentiary and expectations-based prejudice (sometimes called economic prejudice). While evidentiary prejudice involves lost or degraded evidence, or unreliable witness recall, expectations-based prejudice is demonstrated by a showing that a defendant "has continued to build a valuable business around its trademark during the time that plaintiff delayed the exercise of its legal rights." *Ormsby v. Barrett*, No. CV07-5305 RBL, 2008 U.S. Dist. LEXIS 20, at * 10-11 (W.D. Wash. Jan. 2, 2008) (quoting *Grupo Gigante SA de CV v. Dallo & Co, Inc.*, 391 F.3d

---

Act claims exists separate and apart from a laches defense." *Baby Trend, Inc. v. Playtex Prods., LLC*, No. 5:13-cv-647-ODW(RZx), 2013 U.S. Dist. LEXIS 113558, at *8-9 (C.D. Cal. Aug. 7, 2013).

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 12
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1088 (9th Cir. 2004)); *see also Danjaq*, 263 F.3d at 955 (defendant's investment in development, production, marketing and distribution of films supported finding of prejudice).

Here, Vibram has established both forms of prejudice. With respect to expectations-based prejudice, Vibram has used the Bikila trademark since April 2010. Allen Decl., ¶ 3. Vibram registered the Bikila trademark in additional countries, incurring legal fees, which it would not have done had it known of plaintiffs' objection. *Id.*, ¶ 4; Hepburn Decl., Ex. A (Post Dep., 62:1-63:20). Vibram released three additional shoes, the Bikila LS, the Bikila EVO, and the Bikila EVO WP in 2011 and 2014, *after* plaintiffs knew of Vibram's actions but failed to raise any objection. Allen Decl., ¶ 3. Vibram used the Bikila name for these shoes because it already owned the Bikila trademark. Hepburn Decl., U (Martin Dep., 22:24-23:22). Vibram incurred expenses to advertise and market each version of the Bikila shoes. Allen Decl., ¶ 3. In *Jarrow*, the Ninth Circuit affirmed a finding of prejudice where the defendant had invested financially in a marketing campaign to which plaintiff failed to timely object. The Ninth Circuit found that, if plaintiff had filed suit sooner, defendant "could have invested its resources in shaping an alternative identity for [its product] in the minds of the public." 304 F.3d at 839. Had plaintiffs diligently monitored the PTO's website or the Official Gazette, a basic step in the monitoring of a name, they could have notified Vibram of their objection before the release, promotion, and marketing of the shoes, and the parties could have avoided this entire lawsuit and any alleged harm to the plaintiffs. Even if plaintiffs had notified Vibram of their objection when they first had actual knowledge of Vibram's use, Vibram could have invested its resources differently, and certainly could have chosen a different name for its 2011 Bikila LS, 2014 Bikila EVO, and 2014 Bikila EVO WP releases.

Plaintiffs' delay also resulted in substantial evidentiary prejudice. Most, if not all, of the key witnesses are no longer Vibram employees, meaning they are not readily available to assist Vibram in its defense. Allen Decl., ¶ 6. In depositions, these witnesses had little recollection of key facts. Hepburn Decl., ¶ 27. In discovery, plaintiffs have demanded that

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 13
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Vibram provide, under oath, detailed recollections of verbal conversations and other activities involving former employees that happened nearly seven years ago. Hepburn Decl., Ex. X (Interrogatories 18-21). Had plaintiffs timely asserted their claims, key individuals would still be employees and events would be fresh in their minds, enabling Vibram to better defend itself.

Furthermore, Vibram has been prejudiced by plaintiffs' documents not being available. Since the time they learned of the FiveFingers Bikila shoe, plaintiffs have lost the documentation of a contract related to film licensing that they rely upon as evidence of alleged commercial use of the Bikila name in the United States. Hepburn Decl., Ex. L (T. Bikila Dep., 67:12-68:9 (contract lost within last three or four years)); Hepburn Decl., Exs. I-K (Responses to Interrogatory No. 4 (relying on contract as example of commercial use)). Although this film was never made, the proposed payment arrangements and scope of the alleged license could be relevant to damages. Plaintiff Tsige Abebe no longer has any documentary evidence of her alleged book sales in Atlanta in 1996. Hepburn Decl., Ex. T (T. Abebe Dep., 49:2-17). Plaintiffs have also had difficulty locating highly relevant documents, including the email that revealed, contrary to their prior statements under oath, that they knew about the FiveFingers Bikila shoes shortly after their release. *Compare* Hepburn Decl., Ex. I-K (Responses to Interrogatory No. 5 (claiming October 2014 discovery of Vibram's use)) *with id.*, Ex. O (email evidencing knowledge of use in January 2011)). This email was located six months after plaintiffs' discovery responses were due and it is unknown what other helpful emails have not yet been located.

Vibram is also prejudiced by plaintiffs' inability to access multiple relevant email accounts. As discussed above, *supra* Section II.C.1, plaintiffs have multiple email accounts that were used during the relevant time period that they cannot access and which have not been searched for relevant documents in this case. Hepburn Decl., Exs. Q-S (Responses to Interrogatory No. 12). These email accounts were used for communicating between family

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 14
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

members and with people who were allegedly interested in licensing Abebe Bikila's name. *Id.*; Ex. P (Y. Bikila Dep., 123:2-124:10). Vibram has suffered evidentiary prejudice as a result of not having access to highly relevant documents contained in these email accounts.

Even without this evidence of prejudice, a presumption exists that Vibram was prejudiced because plaintiffs filed their claims outside the statutory limitations period. *FLIR Sys. Inc.*, 965 F. Supp. 2d at 1203. In light of the strong evidence of both expectations-based and evidentiary prejudice (only one of which need exist to support summary judgment on a laches defense), plaintiffs cannot overcome the presumption of prejudice. As a matter of law, plaintiffs' delay prejudiced Vibram.

### 3.   There is No Bar to Application of the Laches Doctrine.

Vibram anticipates that plaintiffs will claim that laches is inapplicable here because their complaint contends that Vibram's alleged Lanham Act violations were willful. *See* Second Amended Complaint, ¶¶ 45, 47. Although laches does not bar a suit against a willful infringer, the term "willful" for purposes of a Lanham Act laches determination refers to "conduct that occurs with knowledge that the defendant's conduct constitutes trademark infringement." *FLIR Sys.*, 965 F. Supp. 2d at 1210 (quoting *Danjaq*, 263 F.3d at 957). Because there is no evidence that Vibram was aware of plaintiffs' assertion that they held trademark rights in Abebe Bikila's name at the time Vibram announced and began marketing the FiveFingers shoes using the Bikila name, Vibram's use was not willful and the laches doctrine requires dismissal of plaintiffs' Lanham Act claim. *See Fitbug*, 78 F. Supp. 3d at 1196 (granting motion for summary judgment where there was no evidence disputing defendant's asserted good faith belief that its use was non-infringing).

Moreover, two key facts, neither of which is in dispute, conclusively establish that Vibram acted in good faith as a matter of law. First, Vibram obtained a certificate of registration issued by the PTO for the Bikila trademark. Hepburn Decl., Ex. W. In the absence of any evidence that the registration was obtained in bad faith, the existence of a certificate of

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 15
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

registration precludes a finding of bad faith intent. *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MCX, 2000 U.S. Dist. LEXIS 7522, 2000 WL 709149, at *25 (C.D. Cal. May, 24, 2000). Moreover, Vibram's former CEO repeatedly testified that, had anyone objected to the trademark registration, Vibram would not have pursued the Bikila trademark. Hepburn Decl., Ex. A (Post Dep., 62:1-63:20). Thus, because Vibram used the appropriate process to file its trademark and there is no evidence that Vibram obtained the trademark registration knowing that it would violate plaintiffs' alleged Lanham Act rights, the certificate of registration precludes a finding of willfulness.

Second, there can be no finding of willfulness because Vibram relied on the advice of its counsel that the Bikila trademark was available for registration. Reliance on the advice of counsel precludes a finding of willfulness as a matter of law unless the advice is ignored or found to be incompetent. *See State Indus. Inc. v. Mor-Flo Indus Inc.*, 948 F.2d 1573, 1580 (Fed. Cir. 1991); *Chiron Corp. v. Genentech, Inc.*, 268 F. Supp. 2d 1117, 1121 (E.D. Cal. 2002); *Huss v. City of Huntington Beach*, 317 F. Supp. 2d 1151, 1161 (C.D. Cal. 2000). A party relying on the advice of counsel to preclude a finding of willfulness must demonstrate that "(i) [it] made a complete disclosure of the relevant facts to counsel; (ii) [it] received advice from counsel that the conduct in question was legal; and (iii) [it] relied on that advice in good faith." *Bath & Body Works Brand Mgmt., Inc. v. Summit Entm't, LLC*, No. 11 Civ. 1594 (GBD), 2013 U.S. Dist. LEXIS 97098, at *15-16 (S.D.N.Y. July 9, 2013).

The first factor of this test is satisfied because Vibram made a complete disclosure of relevant facts to its counsel. On April 29, 2009, Tony Post contacted Vibram's outside trademark counsel, Curt Krechevsky at Cantor Colburn LLP to find out if the Bikila trademark was available. Mr. Post told Mr. Krechevsky who Abebe Bikila was and provided a link to Abebe Bikila's Wikipedia page. Hepburn Decl., Ex. Y. It is undisputed that Vibram's counsel knew exactly who Abebe Bikila was when he provided his legal advice.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 16
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The second factor of this test is also satisfied because Mr. Krechevsky advised Vibram, after a "full search," that the term "Bikila" was "available with reasonable risk for use and registration . . . ." Hepburn Decl., Ex. D. This was not a "rubber stamp" approval from an inexperienced attorney. Vibram received its outside legal advice from a highly experienced trademark attorney who also had substantial experience with the footwear industry, having been responsible for all trademark and related legal matters at Reebok prior to becoming the Chair of the Trademark and Copyright Department at Cantor Colburn LLP, an intellectual property law firm. *Id.*, Ex. C.

The final factor of the test is satisfied because it is undisputed that Vibram relied on its experienced trademark counsel's advice in good faith. No reasonable factfinder could conclude that Vibram had any information that contradicted its counsel's opinion; indeed, it did not. Having received a detailed written opinion from its counsel, which included a full trademark search, Vibram had no reason to believe that it could not in good faith register and use the Bikila trademark. Hepburn Decl., Ex. D. The trademark search did not reveal any commercial activity by plaintiffs, undoubtedly because they do not engage in any such activity in the United States. *Id.* Mr. Post had no knowledge of the plaintiffs when he chose the Bikila name, or at any other time prior to their filing of the complaint. Hepburn Decl., Ex. A (Post Dep., 15:24-16:8). Vibram relied on its counsel's advice in good faith in registering the Bikila trademark. *Id.* (Post Dep., 59:10-17; 86:18-87:1; 241:10-21). In light of Vibram's good faith reliance on the advice of its counsel, there can be no finding of willfulness and, accordingly, no bar on Vibram's laches defense. As a matter of law, plaintiffs unreasonably delayed in filing their Lanham Act claim and it should be dismissed pursuant to the doctrine of laches.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 17
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**C.     Plaintiffs' Claims Are Barred, in Whole or in Part, by the Applicable Statutes of Limitations.**

      **1.   Plaintiffs' Lanham Act Claim is Limited to Damages Occurring After February 9, 2012.**

To the extent it is not fully dismissed pursuant to the doctrine of laches, plaintiffs' Lanham Act claim is limited to damages occurring within three years prior to the February 9, 2015 filing of their complaint. *Jarrow*, 304 F.3d at 838; RCW 4.16.080(2); *Eat Right Foods, Ltd.*, 2015 U.S. Dist. LEXIS 63578, at * 6. The Lanham Act treats infringement as a "continuing wrong," meaning that a plaintiff may assert a claim provided that the last allegedly infringing act is within the statutory period. *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 821 (7th Cir. 1999). However, the Lanham Act bars "monetary relief for the period outside the statute of limitations." *Jarrow*, 304 F.3d at 837; *24/7 Customer, Inc. v. 24-7 Intouch*, No. 5:14-cv-02561-EJD, 2015 U.S. Dist. LEXIS 43935, at * 6 (N.D. Cal. Mar. 31, 2015). Thus, plaintiffs' Lanham Act damages are limited to those that occurred within three years of the filing of their complaint. Accordingly, Vibram is entitled to an order barring any claim for Lanham Act damages based on sales of FiveFingers Bikila shoes that occurred prior to February 9, 2012.

      **2.   Plaintiffs' State Law Claims Are Barred by the Applicable Limitations Periods.**

Plaintiffs' delay in filing their complaint bars their state law claims in their entirety. A three year statutory limitations period applies to plaintiffs' claims for violation of the Washington Personality Rights Act ("WPRA") and unjust enrichment. *See* RCW § 4.16.080; *see also Hart v. Clark Cty.*, 52 Wash. App. 113, 115-16, 758 P.2d 515 (1988) (three year statute of limitation applies to actions for unjust enrichment). A four year limitations period applies to plaintiffs' claims for violation of the Washington Consumer Protection Act ("CPA"). RCW § 19.86.120.

The statutory limitations period began to accrue when plaintiffs had the right to seek relief in the courts. *McLeod v. Northwest Alloys, Inc.*, 90 Wash. App. 30, 35, 969 P.2d 1066

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 18
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(1998). Plaintiffs had the right to bring a claim against Vibram by at least April 2010, when it released the FiveFingers Bikila shoes nationwide, or July 2010, when the Bikila trademark was registered on the principal register. *Fitbug*, 78 F. Supp. 3d at 1193 (nationwide product release is constructive notice ); 15 U.S.C. § 1072 (trademark registration is constructive notice). Even if the Court were to apply a discovery rule to the accrual of the limitations period, plaintiffs were on actual notice of their right to bring a claim no later than January 10, 2011. Hepburn Decl., Ex. L (T. Bikila Dep., 44:4-7); Ex. O. Thus, the three year limitations period for the WPRA and unjust enrichment claims ended no later than January 10, 2014, and the four year limitations period for the CPA claim ended by January 10, 2015. Plaintiffs did not file their complaint until February 2015 and their state law claims are therefore barred and should be dismissed in their entirety.

The only way plaintiffs could maintain any of their state law claims is if some exception exists to the limitations period, which it does not. Vibram anticipates that plaintiffs may argue that the "continuing tort" or "continuing wrong" doctrine applies to their claims because sales of FiveFingers Bikila shoes continued during the statutory limitations period. If the claims are treated as "continuing wrongs," then the claims will not be barred in their entirety but damages will be limited to the statutory period preceding filing suit. *Woldson v. Woodhead*, 159 Wash. 2d 215, 221, 149 P.3d 361 (2006) (citing *Bradley v. Am. Smelting & Ref. Co.*, 104 Wash. 2d 677, 691-92, 709 P.2d 782 (1985)).

There is no basis to apply the "continuing wrong" theory to plaintiffs' state law claims. "[N]o Washington court has applied the continuing tort doctrine outside of property claims (trespass, nuisance, etc.) and employment discrimination claims," *Vance v. Pierce Cty.*, No. 73632-9-I, 2015 Wash. App. LEXIS 2363, at *15-16 (Wash. App. Oct. 5, 2015). This Court previously refused to apply the continuing wrong doctrine to a CPA claim because doing so "would defeat the purpose of the CPA's four-year statute of limitations. *Dees v. Allstate Ins. Co.*, 933 F. Supp. 2d 1299, 1309 n. 9 (W.D. Wash. 2013); *see also Diamond*

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 19
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Concrete, LLC v. Pac. Northwest Reg'l Council of Carpenters*, No. C11-5360BHS, 2011 U.S. Dist. LEXIS 82382, at \*7 (W.D. Wash. July 26, 2011) (declining to extend continuing wrong doctrine to defamation claim). Courts in other jurisdictions have also declined to extend the doctrine to unjust enrichment claims. *E.g.*, *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 631 (10th Cir. 2008).

While Washington courts have not considered this issue in the context of a WPRA or unjust enrichment claim, both the Washington legislature and Washington courts have declined to apply the continuing wrong doctrine to similar types of claims. For example, the Washington legislature, in adopting the Uniform Trade Secrets Act, approved language that expressly provides that "a continuing misappropriation constitutes a single claim." RCW § 19.108.060; *see also McLeod*, 90 Wash. App. at 35 (declining to treat misappropriation as continuing tort). Washington courts have also adopted the single publication rule, which is often applied to defamation claims and provides that a cause of action accrues on the first date of offending use and the limitations period only "resets" if the offending act is repeated in a different format. *Yeager v. Bowlin*, 693 F.3d 1076, 1081-82 (9th Cir. 2012); *see also Herron v. King Broad. Co.*, 109 Wash. 2d 514, 521, 746 P.2d 295 (1987) (adopting single publication rule in Washington).

The facts and legal theories at issue in this case are substantially similar to those cases where Washington courts have declined to apply the "continuing wrong" doctrine. In *McLeod*, for example, the plaintiff argued that the limitations period ran from defendant's use of allegedly misappropriated trade secret material. 90 Wash. App. at 37. The Court rejected this argument, finding that the limitations period ran from the date of the unauthorized disclosure of the alleged trade secret and a new limitations period could not be triggered by subsequent "use" of the alleged trade secret. *Id.*, at 38. Here, much like in *McLeod*, Vibram's allegedly wrongful actions all stem from acts that occurred well outside the limitations period: the registration of the Bikila trademark and release of the FiveFingers Bikila shoe in 2010.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 20
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Most of the sales of the FiveFingers Bikila also occurred outside the limitations period. Allen Decl., ¶ 5. Subsequent sales of a shoe that was named and released well outside the statutory period are akin to the "use" of alleged trade secrets in *McLeod* and cannot trigger a new limitations period.

Because the continuing wrong theory does not apply to plaintiffs' WPRA, CPA or unjust enrichment claims, and plaintiffs failed to file within the required time period after their claims began to accrue, their state law claims are barred and should be dismissed in their entirety.

**D.    Plaintiffs Lack Standing to Assert a Lanham Act Claim.**

As an independent basis for summary judgment, plaintiffs' Lanham Act claim is barred because plaintiffs do not have standing to assert rights in Abebe Bikila's name. To establish standing for their Lanham Act claim, plaintiffs must prove either that (1) they acquired a property right in Abebe Bikila's name as a result of Ethiopian inheritance laws, or (2) that they acquired a property right in the Bikila name through use of the name in commerce in the United States. Plaintiffs cannot establish either predicate to standing, which requires dismissal of their Lanham Act claim.

**1.    Plaintiffs Do Not Have A Property Right in Abebe Bikila's Name.**

The unique manner in which plaintiffs claim to have acquired rights in Abebe Bikila's name makes this case unlike typical false endorsement actions. Typically, in the United States, when a celebrity[6] is deceased, his heirs or his estate will have standing to sue for false endorsement under section 43(a) of the Lanham Act. *See Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1068 (9th Cir. 2015) (quoting *Waits v. Frito-Lay, Inc.*, 978 F.2d 1093, 1110 (9th Cir. 1992) *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, __ U.S. __, 134 S. Ct. 1377, 1385, 188 L.Ed.2d 392 (2014)). This, however, is not a typical case. Abebe Bikila lived and died in Ethiopia, where individuals do

---

[6] Vibram assumes, for purposes of this argument only, that Abebe Bikila is a celebrity or famous person in the United States. Vibram disputes that this is actually the case.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

not own any rights in their names that can be passed to their heirs. Because plaintiffs did not inherit any rights in Abebe Bikila's name, they lack standing to pursue their Lanham Act claim.

Plaintiffs' alleged rights in Abebe Bikila's name are derivative of any rights Abebe Bikila may have had in his name. Plaintiffs assert that they inherited a property right in Abebe Bikila's name as a result of intestate succession. *See* Second Amended Complaint [Dkt. 34], ¶ 12; *see also Joplin Enters. v. Allen*, 795 F. Supp. 349, 350 (W.D. Wash. 1992) (the right of publicity is a property right); *New Kids on the Block v. News Am. Publ'g, Inc*., 971 F.2d 302, 306 (9th Cir. 1992) (a trademark is a limited property right). Plaintiffs allege that they acquired these property rights "[p]ursuant to Article 842 of the Civil Code of Ethiopia." Second Amended Complaint [Dkt. 34], ¶ 8. Article 842 of the Civil Code of Ethiopia merely provides that a deceased's heirs are his children, who "each shall receive an equal portion of the succession." Meheret Decl., Ex. A (Art. 842). Thus, the rights that plaintiffs allegedly inherited are the same rights that Abebe Bikila had in his name, if any.

In identifying the foreign law they intend to rely upon, plaintiffs fail to identify any provision of Ethiopian law that granted Abebe Bikila a property right in his name, and instead simply erroneously assume that such rights existed and were therefore inherited. The Ethiopian Civil Code does not provide any property right in a person's name. Meheret Decl., ¶ 4, Exs. B & C. This is a logical legislative decision given Ethiopia's patronymic naming convention, which provides that each child's name is made up of a given name followed by his or her father's given name. Hepburn Decl., Ex. T (T. Abebe Dep., 17:18-18:5); *see also* Meheret Decl., ¶ 5, Ex. C (Art. 32-36). Indeed, in traditional Ethiopian culture, Abebe Bikila's descendants would not use the "Bikila" name at all. *Id.* Consistent with the absence of any property right in a person's name, Ethiopian Airlines recently named an airplane the "Abebe Bikila" and widely promoted it as part of the introduction of its Tokyo-Ethiopia flight on the 50th anniversary of Abebe Bikila's gold medal in the Tokyo Olympics. *Id.*, ¶ 6 , Ex. D.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 22
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

This use is permissible under Ethiopian law because there are no property rights in names. *Id.*

Because Abebe Bikila did not have a property right in his name, there was nothing for plaintiffs to inherit and they cannot maintain their Lanham Act claim based on their alleged inherited rights.

### 2.  Plaintiffs Do Not Have a Commercial Interest in Abebe Bikila's Name.

Because plaintiffs could not inherit any rights from Abebe Bikila, their standing to bring a Lanham Act claim is dependent on establishing commercial use of the Bikila name in the United States, which they cannot do. While section 43(a) of the Lanham Act does not treat ownership of a name as a prerequisite for standing, in the absence of ownership, plaintiffs must show "a commercial interest in the allegedly misused mark that is likely to be damaged." *Nat'l Licensing Ass'n, LLC v. Inland Joseph Fruit Co.*, 361 F. Supp. 2d 1244, 1256 (E.D. Wash. 2004). As the trademark axiom goes, no trade, no trademark. Plaintiffs are not conducting any trade in the Bikila name in the United States and do not have standing to assert a Lanham Act claim.

Plaintiffs are not using the Bikila name commercially in the United States and have not done so in the last 20 years, if they ever did. Plaintiffs have sold no goods under the Bikila name in the United States. Hepburn Decl., Ex. P (Y. Bikila Dep., 109:5-20; 110:22-111:2). Plaintiffs have never licensed the Bikila name to any third party in the United States. *Id.*, Ex. T (T. Abebe Dep., 86:15-18). The only alleged commercial use of the Bikila name in the United States is alleged book sales, which were conducted privately via word of mouth and that have no documentary evidence to support their occurrence, approximately 20 years ago.[7] *Id.* (T. Abebe Dep., 47:23-55:20). While the Second Amended Complaint generically asserts that plaintiffs own, market and license the name and other artistic properties of Abebe Bikila, plaintiffs have no evidence to support this assertion. Because they did not inherit any rights

---

[7] Nonuse of a trademark for three years is considered prima facie evidence of abandonment. 15 U.S.C. § 1127. In any event, the alleged book sales are in a different category of goods than Vibram's Class 25 use of the Bikila trademark for footwear.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 23
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  under Ethiopian law, and do not use the Bikila mark in commerce in the United States,

2  plaintiffs do not have any cognizable interest in the Bikila name and have no standing to bring

3  a Lanham Act claim. Accordingly, their Lanham Act claim should be dismissed.

4  **E.      Plaintiffs' Claims for Violation of the Consumer Protection Act and Unjust**
   **Enrichment Should Be Dismissed for Lack of Standing.**

5          Plaintiffs' claims for violation of the Washington Consumer Protection Act and unjust

6  enrichment similarly should be dismissed because plaintiffs lack standing to assert the

7  claims.[8] As discussed above, plaintiffs did not inherit any rights in Abebe Bikila's name under

8  Ethiopian law and do not use the Bikila name in commerce in the United States. A key

9  element of a Consumer Protection Act claim is that plaintiffs suffer some injury to *their*

10  business or property. *Hangman Ridge Training Stables v. Safeco Title Ins. Co*., 105 Wash. 2d

11  778, 780, 719 P.2d 531 (1986). But because plaintiffs did not inherit the rights to Abebe

12  Bikila's name (and never created any common law trademark rights through use), they

13  cannot, as a matter of law, suffer any damage to their business or property. Similarly, unjust

14  enrichment requires that plaintiffs confer a benefit on Vibram. *Young v. Young*, 164 Wash. 2d

15  477, 484, 191 P.3d 1258 (2008). But because plaintiffs do not own any rights in Abebe

16  Bikila's name, they could not, as a matter of law, confer any benefit on Vibram. Because

17  plaintiffs do not own the rights in Abebe Bikila's name, their Consumer Protection Act and

18  unjust enrichment claims must be dismissed for lack of standing.

19                              **IV.     CONCLUSION**

20          Had plaintiffs contacted Vibram when they discovered its use of the Bikila trademark,

21  this entire litigation could have been avoided. Plaintiffs' complaint is untimely, and they do

22  not hold the rights they seek to enforce. Accordingly, for the reasons set forth above, Vibram

23  requests entry of an order dismissing plaintiffs' claims in their entirety.

24

25  ────────────────
26  [8] This argument does not address the WPRA claim, which by its language creates standing
    independent of standard principles of ownership of property rights. The parties intend to file
    cross motions on the constitutionality of the WPRA at a later stage, if necessary.

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 24
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

DATED this 21st day of April, 2016.

2

3                                         K&L GATES LLP

4                                         By: /s/Jeffrey C. Johnson
                                          Jeffrey C. Johnson, WSBA # 23066
5                                         Joanne M. Hepburn, WSBA # 32841
                                          Kendra H. Nickel-Nguy, WSBA # 45520
6                                         925 Fourth Avenue, Suite 2900
                                          Seattle, WA 98104
7                                         Tel:  (206) 623-7580
                                          Fax: (206) 623-7022
8                                         Email:     jeff.johnson@klgates.com
                                                     joanne.hepburn@klgates.com
9                                                    kendra.nickel-nguy@klgates.com

10                                        Attorneys for Defendants
                                          Vibram USA, Inc. and
11                                        Vibram FiveFingers LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 25
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1

**CERTIFICATE OF SERVICE**

2
I hereby certify that on April 21, 2016, I electronically filed the foregoing with the

3
Clerk of the Court using the CM/ECF system which will send notification of such filing to the

4
registered CM/ECF users in this action.

5
K&L GATES LLP

6
By:  /s/Jeffrey C. Johnson

7
Jeffrey C. Johnson, WSBA # 23066
925 Fourth Avenue, Suite 2900

8
Seattle, WA 98104
Tel:  (206) 623-7580

9
Fax: (206) 623-7022
Email:  jeff.johnson@klgates.com

10
Attorneys for Defendants

11
Vibram USA, Inc. and
Vibram FiveFingers LLC

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT - 26
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022