The Honorable Ronald B. Leighton

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TEFERI ABEBE BIKILA, an individual;
YETNAYET ABEBE BIKILA, an
individual; TSIGE ABEBE, an individual;
and YEWEBDAR W. GIORGESE, an
individual,

                              Plaintiffs,

        v.

VIBRAM USA, INC., a Delaware
corporation, and VIBRAM FIVEFINGERS
LLC, a Massachusetts limited liability
company,

                              Defendants.

No. 3:15-cv-05082-RBL

**DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT**

**REDACTED**

NOTE ON MOTION CALENDAR:
NOVEMBER 4, 2016

ORAL ARGUMENT REQUESTED

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# I.    INTRODUCTION AND RELIEF REQUESTED

Defendants Vibram USA, Inc. and Vibram FiveFingers LLC (collectively, "Vibram") move for summary judgment on the following grounds:

*First*, plaintiffs' Lanham Act claim must be dismissed because all evidence confirms that U.S. consumers are unaware of who Abebe Bikila was and therefore cannot be confused about Abebe Bikila's or plaintiffs' endorsement of the FiveFingers Bikila shoe.

*Second*, plaintiffs' Washington Consumer Protection Act ("CPA") and unjust enrichment claims must be dismissed because they also rely on nonexistent consumer confusion. To the extent the CPA claim is not dismissed in its entirety, it must be limited to damages based on Washington sales because the CPA applies only to Washington commerce.

*Third*, plaintiffs' damages theories must be dismissed because there is no basis to support (a) a royalty claim when plaintiffs have no history of licensing the Bikila name, (b) a disgorgement of profits when sales were not attributable to use of the Bikila name and Vibram did not act willfully, or (c) corrective advertising when no evidence suggests that plaintiffs' mark has been damaged or that any alleged damage could be corrected through advertising.

*Fourth*, plaintiffs' Washington Personality Rights Act ("WPRA") claim must be dismissed because there is no evidence that Bikila's name had value at the time of his death.

*Finally*, summary judgment should be granted as to the WPRA's unconstitutionality.[1]

# II.    RELEVANT FACTS

## A.    Vibram's Registration and Use of its Bikila Trademark.

Vibram is a small company based in Massachusetts. Hepburn Decl., Ex. C (Post Dep., 232:15-233:17). Its signature consumer product is the Vibram FiveFingers, a shoe style that is intended to mimic the experience of being barefoot. *Id.*, Ex. D (Allen Decl., ¶ 2). The FiveFingers shoes are readily identifiable, as they are shaped like a glove for the foot, with

---

[1] In April 2016, Vibram filed an early procedural motion for summary judgment, arguing that plaintiffs' claims are barred by the doctrine of laches, the applicable statutes of limitations, and a lack of standing. [Dkt. 49]. The Court has not yet ruled on that motion.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

individual sections for each toe. *Id.*

In 2009, Vibram created a version of its FiveFingers shoe intended for running. Vibram's then-president, Tony Post, an active marathoner, identified "Bikila" as a potential name for the shoe. Hepburn Decl., Ex. C (Post Dep., 42:17-43:12). Post wanted to honor Abebe Bikila, whom he considered "a great, though somewhat obscure runner from Ethiopia." *Id.*, Ex. E. Post knew Bikila won the 1960 Olympic marathon while running barefoot and wanted to pay tribute to his achievement, even though few people recognized the name. *Id.*, Ex. C (Post Dep., 42:17-43:12; 44:13-45:19; 48:3-8; 119:4-22). Bikila died in 1973, over 35 years before Post sought to use the name "Bikila." Second Am. Compl. [Dkt. 34], ¶ 7.

After obtaining approval from its outside trademark counsel, Vibram registered the trademark "Bikila" and named the new shoe the FiveFingers Bikila. *Id.*, Exs. C & F (Post Dep., 59:10-17; 86:18-87:1; 241:10-21 & Ex. 2). Like all other FiveFingers shoes, which are branded and labeled "Vibram" and "FiveFingers" on the shoes themselves, the Bikila name did not appear anywhere on the shoe. *Id.* (Post Dep. 38:24-39:23). The FiveFingers shoes were particularly popular in 2010 and 2011, despite being referred to in the media as the "next horrible shoe fad." *Id.*, Ex. G. In 2015, in the normal course of refreshing its product line, Vibram improved its running shoe and gave it a new name, V-Run. Rosen Decl., ¶ 4.

**B.      Consumers Were Not Confused or Deceived by the FiveFingers Bikila Shoes.**

**1.      Vibram's Evidence of the Absence of Consumer Confusion.**

Plaintiffs' Lanham Act, CPA, and unjust enrichment claims all arise from allegations of consumer confusion or deception. *See generally*, Second Am. Compl. To determine the extent, if any, of consumer confusion related to the name of the FiveFingers Bikila shoe, Vibram retained Sarah Butler, a Vice President at National Economic Research Associates, Inc. ("NERA"), a firm that provides statistical, survey, economic, and financial analysis. Hepburn Decl., Ex. H, ¶ 1. Vibram asked Butler to conduct a survey to determine whether consumers are likely to believe that Abebe Bikila or plaintiffs are the source of, affiliated or

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 2
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

associated with, or sponsored or endorsed the FiveFingers Bikila shoes. *Id.*, ¶ 4.

Butler conducted a survey of 401 adult U.S. consumers who were likely to purchase shoes that could be used for running, cross training, trekking or climbing, which were the recommended uses for the shoes stated on Vibram's website. *Id.*, ¶¶ 15, 21, 48; Hepburn Decl., Exs. A & B. Butler divided the survey participants into two groups: a test group, which was shown Vibram's webpage for the FiveFingers Bikila shoes, and a control group, which was shown an identical webpage, except that all references to "BIKILA" were replaced with the word "LONTRA," which is the name of another FiveFingers shoe. *Id.*, ¶¶ 6, 30, 33. The control group allowed Butler to determine whether any measured confusion was the result of guessing or issues that were unrelated to the "BIKILA" word that was being tested. *Id.*, ¶ 5.

After reviewing the FiveFingers Bikila webpage, respondents in the test group were asked what would influence their decision to buy the shoes. *Id.*, ¶ 6. Respondents mentioned the style, the function, and other aspects of the shoe, but not a single respondent indicated that the name or word "BIKILA" would influence his or her purchasing decision. *Id.*

Next, respondents were asked a series of questions about who makes or puts out the product shown, whether the product was affiliated with someone or some company, and whether it was endorsed or sponsored by someone or some company.[2] Across all questions in the test group, 37 respondents (18.5%) indicated that the product shown was "made or put out by, affiliated or associated with, or sponsored or endorsed by someone or some company called BIKILA." *Id.*, ¶¶ 6, 42. Similarly, when the control group saw an identical web page but with all references to "BIKILA" replaced with "LONTRA," 38 respondents (18.9%) mentioned LONTRA as the source of the product shown. *Id.*, ¶ 42. These similar results between the control and test groups demonstrate that consumers who identified "BIKILA" or "LONTRA" as the source of the product were simply reading the word off the webpage that was displayed to them rather than identifying an actual person or company named "BIKILA"

---

[2] Ms. Butler's survey was similar to the one approved by the Ninth Circuit in *Fifty-Six Hope Rd. Music, Ltd. v. A.V.E.L.A., Inc.*, 778 F.3d 1059, 1070 (9th Cir. 2015).

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 3
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

or "LONTRA" as the source of the shoes. *Id.*, ¶ 6.

Butler also asked questions to test awareness of Abebe Bikila amongst U.S. consumers, and found very low awareness. *Id.*, ¶ 50. When test group respondents were asked whether they had heard of "BIKILA" prior to the survey, and were asked to describe who or what "BIKILA" is, only one respondent identified "BIKILA" as a runner. *Id.*, ¶¶ 6, 44, 50. Even when prompted with a list of descriptions and asked to select which best identified "BIKILA," only five of the respondents who had associated the Vibram product shown with "BIKILA" identified Bikila as a runner. *Id.*, ¶¶ 6, 47. In other words, of the 200 consumers in the test group shown the Vibram FiveFingers Bikila webpage, no more than five (2.5%) believed the product was made by, associated with, or endorsed by "BIKILA," a runner, and none identified the product as being associated with the plaintiffs. *Id.*

This already low level of potential consumer confusion dipped even lower when the test group's results were compared to the control group. In the control group, of the 38 respondents who believed the Vibram product shown was made or put out by, associated or affiliated with, or sponsored or endorsed by "LONTRA," three individuals (1.5%) indicated they had heard of "LONTRA" before and identified "LONTRA" as a runner (even though Lontra is actually a genus of river otters). *Id.*, ¶¶ 6, 47. Thus, subtracting the control group's percentage (to discount confusion unrelated to the word being tested), results in only one percent of test group respondents who both connected the Vibram product with BIKILA and identified BIKILA as a runner. *Id.*

Despite focusing on the targeted consumers for the FiveFingers Bikila shoes, Butler still found "extremely small percentages of consumers aware of Abebe Bikila." *Id.*, ¶ 50. Accordingly, she concluded that "Abebe Bikila and the Bikila family is generally unknown to U.S. consumers, and therefore consumers are unlikely to be confused as to an association between Vibram and the Bikila family." *Id.*, ¶ 50. Butler further found that "consumers do not associate Vibram's use of BIKILA with Abebe Bikila." *Id.*, ¶ 51.

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 4
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Butler's results were also consistent with the opinion of Vibram's athletic endorsement expert, whose analysis similarly confirmed a low level of awareness of Abebe Bikila among U.S. consumers. Hepburn Decl., Ex. I, at 9-11.

### 2. Vibram's Experience Selling the FiveFingers Bikila Shoes.

Butler's survey results are also consistent with Vibram's own experience that consumers did not know who or what "Bikila" was. Consumers often asked "What's a Bikila?" and mispronounced the name. Hepburn Decl., Ex. J (M. Martin Dep., 83:9-84:2). Vibram never used any image of Abebe Bikila in any consumer-facing advertising or marketing, but advised its third-party sales representatives who Abebe Bikila was so they could answer the "What's a Bikila?" question. *Id.*; Rosen Decl., ¶ 2. Its point of sale materials did not contain any reference to Abebe Bikila. Rosen Decl., Ex. A. Consistent with its intent to honor Abebe Bikila, Vibram occasionally referenced the historical fact of his Olympic victory, such as on a microsite that it promoted in 2010-2011, in a press release, and in two Twitter posts. *Id.*, ¶ 2. Abebe Bikila was not a focus of Vibram's consumer outreach, a conclusion confirmed by the fact that, out of the approximately 103,475 customer inquiries Vibram received via its website between 2009 and 2013 (when inquiries were tracked), only four (0.0039%) made any reference to Abebe Bikila. Hepburn Decl., Ex. K, at 3-5.

### 3. Plaintiffs Failed to Create Awareness of Abebe Bikila in the U.S.

Plaintiffs have not kept Bikila's Olympic victory, which occurred approximately 56 years ago, alive in the minds of U.S. consumers. The temporal distance of the victory is particularly relevant in this case because one third-party study found that 84% of FiveFingers purchasers are under 50 years old and, therefore, were not alive when Bikila won the Olympic marathon. *See* Hepburn Decl., Ex. L, at 5. Plaintiffs have sold no goods under the Bikila name in the United States, nor have they ever licensed the name to any third-party in the United States. *Id.*, Ex. M (Y. Bikila Dep., 109:5-20; 110:22-111:2). Ex. N (T. Abebe Dep., 86:15-18).

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

**4.      Plaintiffs Have No Evidence of Fame or Confusion.**

In stark contrast to Butler's scientific study, plaintiffs retained Dr. Richard Yalch, a marketing professor who concluded that Abebe Bikila is famous based on his review of Wikipedia, a website that can be edited by anyone with an Internet connection, and his online research, during which he discovered that there are multiple mentions of Abebe Bikila's victory on the Internet. *See id.*, Ex. O (Yalch Report, at 2); Ex. P (Yalch Dep., 62:25-63:9).

Butler found Yalch's conclusions unreliable because he presents "no evidence to demonstrate that a substantial or meaningful number of consumers know Abebe Bikila" *Id.*, Ex. Q, ¶ 8.

Yalch then uses his unsupported assumption that Abebe Bikila is famous to conclude that Vibram's use of its Bikila mark caused consumer confusion. Hepburn Decl., Ex. O (Yalch Report, at 5). This conclusion is based on an email to Vibram's customer service, which stated, "Excellent that you guys are honouring the great Bikila! So is he getting a fair deal out this or are you guys just using the name?" *Id.*, Ex. R.

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 6
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

## III.     AUTHORITY AND ARGUMENT

### A.     Summary Judgment Standard.

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is required where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Broussard v. Univ. of Cal.*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quotations omitted). Further, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

### B.     Plaintiffs' Lanham Act Claim Is Barred by the Absence of Confusion.

To prevail on their Lanham Act false endorsement claim, plaintiffs must show that Vibram's use of the Bikila trademark was "likely to cause confusion, or to cause mistake, or to deceive" as to plaintiffs' connection with the FiveFingers Bikila shoes. *See* 15 U.S.C. § 1125(a)(1). Where a plaintiff fails to produce any admissible evidence showing a likelihood of confusion, summary judgment is appropriate. *Applied Info. Scis. Corp. v. eBay, Inc.*, 511 F.3d 966, 973 (9th Cir. 2007); *see also Stonefire Grill, Inc. v. FGF Brands, Inc.*, 987 F. Supp. 2d 1023, 1047 (C.D. Cal. 2013) (noting that "the Ninth Circuit has not hesitated to affirm summary judgment" on likelihood of confusion "where the evidence is clear and tilts heavily in favor of one party"). To survive summary judgment, plaintiffs must "show sufficient

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 7
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

evidence to permit a rational trier of fact to find that confusion is 'probable,' not 'merely possible.'" *M2 Software, Inc. v. Madacy Entm't*, 421 F.3d 1073, 1085 (9th Cir. 2005).

To determine whether consumer confusion is probable, the Ninth Circuit typically considers the eight factors set forth in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979). For celebrity endorsement cases, the *Sleekcraft* factors are modified to: (1) the level of recognition that the plaintiff has among relevant consumers; (2) the relatedness of plaintiff's fame or success to the defendant's product; (3) the similarity of the likeness used by the defendant to the actual plaintiff; (4) evidence of actual confusion; (5) marketing channels used; (6) likely degree of purchaser care; (7) defendant's intent on selecting the plaintiff; and (8) likelihood of expansion of the product lines. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1007-08 (9th Cir. 2001).

Courts need not, however, address each of the *Sleekcraft* factors and may instead focus on the "ultimate test" of "whether a 'reasonably prudent consumer' in the marketplace is likely to be confused as to the origin of the goods." *Multi Time Machine, Inc. v. Amazon.com, Inc.*, 804 F.3d 930, 937 (9th Cir. 2015) (affirming grant of summary judgment without full *Sleekcraft* analysis). This is because the *Sleekcraft* factors "are intended as an adaptable proxy for consumer confusion, not a rote checklist." *Network Automation, Inc. v. Advanced Sys. Concepts, Inc.*, 638 F.3d 1137, 1145 (9th Cir. 2011); *Cairns v. Franklin Mint Co.*, 292 F.3d 1139, 1149 (9th Cir. 2002) ("Under the law of false endorsement, likelihood of consumer confusion is the determinative issue."). Here, because few consumers know who Abebe Bikila was and plaintiffs have failed to produce any admissible evidence of a likelihood of confusion, the Lanham Act claim fails as a matter of law.

### 1. Plaintiffs Have No Admissible Evidence of Likelihood of Confusion.

In considering the "ultimate test" of likelihood of confusion, the Court considers whether the "typical buyer exercising ordinary caution" would be confused as to whether Abebe Bikila or the Bikila family endorsed the FiveFingers Bikila shoes. *Multi Time*

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

*Machine*, 804 F.3d at 937. To make this determination, courts in the Ninth Circuit regularly consider surveys as evidence of likelihood of confusion on summary judgment. Where the surveys demonstrate likelihood of confusion is relatively high, summary judgment will be denied. *See Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1014 (9th Cir. 2004) (finding 55-65% consumer awareness of brand presented issue of fact); *Fifty-Six Hope Rd. Music, Ltd.v. A.V.E.L.A.*, 688 F. Supp. 2d 1148, 1168 (D. Nev. 2010) (finding 20% confusion presented issue of material fact).

Conversely, where survey evidence demonstrates that a likelihood of confusion is low, summary judgment is proper. *Gallo v. Proximo Spirits, Inc.*, No. CV-F-10-411 LJO JLT, 2012 WL 273076, at * 5, 13 (E.D. Cal. Jan. 30, 2012) (finding 1% likelihood of confusion presented no issue of material fact); *see also Henri's Food Prods Co. v. Kraft, Inc.*, 717 F.2d 352, 358 (7th Cir. 1983) (affirming no likelihood of confusion based on survey evidence of 7.6% confusion). Typically, survey results showing less than ten percent consumer confusion result in a finding of no likelihood of confusion. Thomas J. McCarthy, 6 McCarthy on Trademarks and Unfair Competition § 32:189 (4th ed. 2016).

Once a defendant submits evidence of an absence of confusion, it is not enough for a plaintiff to present an expert criticizing defendant's survey; the plaintiff must present a counter-survey of its own. *Gallo*, 2012 WL 273073, at *18. The failure to provide a consumer survey showing a likelihood of confusion "warrants a presumption that the results would have been unfavorable." *Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 55 F. Supp. 2d 1070, 1084 (C.D. Cal. 1999) *aff'd*, 202 F.3d 278 (9th Cir. 1999).

Here, Butler's survey demonstrates that only one percent of consumers who connected the Vibram FiveFingers product with Bikila also identified Bikila as a runner. Hepburn Decl., Ex. H, ¶¶ 6, 47. Plaintiffs have produced only a speculative report from Yalch that presumes confusion exists because Bikila is famous, ███████████████████████████████ ███████████████████████. *Id.*, Ex. P (Yalch Dep., 62:25-63:9). Plaintiffs have no

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 9
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

evidence that U.S. consumers knew who Abebe Bikila was or believed that he or plaintiffs endorsed the FiveFingers Bikila shoes. By failing to demonstrate a likelihood of consumer confusion, plaintiffs fail the "ultimate test" for a Lanham Act claim. *M2 Software, Inc.*, 421 F.3d at 1085 (surviving summary judgment requires evidence of "probable" not "merely possible" confusion).

### 2. The *Sleekcraft* Factors Confirm No Likelihood of Confusion.

Even if the Court conducts a full *Sleekcraft* analysis, the result is the same.

(a) *Level of Recognition*. In false endorsement cases, the traditional "strength of the mark" factor measures "the level of recognition that the celebrity has among consumers of the allegedly infringing goods." *Lemon v. Harlem Globetrotters, Int'l, Inc.*, 437 F. Supp. 2d 1089, 1095 (D. Ariz. 2006). Both Butler's survey and the survey used by Vibram's athletic endorsement expert establish that U.S. consumers have a very low level of awareness of Abebe Bikila. Hepburn Decl., Ex. H, ¶ 50; Ex. I, at 9-11.

It is plaintiffs' burden to present evidence regarding Abebe Bikila's level of recognition among Vibram consumers. *See Lemon*, 437 F. Supp. 2d at 1096. General assertions of "world-wide fame" such as those made by plaintiffs are insufficient to carry this burden. *Id.* It is also insufficient to point to evidence of past fame, such as Yalch's reliance on Bikila's historical success, and the mere existence of a Wikipedia page. In *Sullivan v. CBS Corp.*, the Seventh Circuit rejected unsupported assertions that the rock band Survivor was well-known, when it had not released an album in over ten years and there was no evidence it enjoyed recognition as the originator of any products other than rock albums and concert t-shirts. 385 F.3d 772, 777 (7th Cir. 2004). Survivor, like Abebe Bikila, has a Wikipedia page. Hepburn Decl., Ex. S. If fame is not a given for Survivor, whose "Eye of the Tiger," the theme to *Rocky III*, sold more than 9 million copies, then it is certainly not a given for Bikila. *Id.* Because plaintiffs have failed to present any objective evidence that Bikila is well-known among consumers of Vibram FiveFingers shoes, this factor weighs heavily in Vibram's favor.

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 10
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(b)     *Relatedness of Abebe Bikila's Fame to FiveFingers Bikila Shoes.* This factor considers whether a relatedness exists such that "the public will mistakenly assume there is an association between the producers of the related goods, though no such association exists." *Sleekcraft*, 599 F.2d at 350. Abebe Bikila's victory occurred in Italy 50 years before Vibram released its shoes in the United States, making his fame distant both in time and location. Consistent with the survey evidence, most U.S. consumers do not know who Abebe Bikila was and therefore, given the significant passage of time, would not infer a connection between his past accomplishments and Vibram's shoes. This factor weighs in Vibram's favor.

(c)     *Similarity of the Likeness Used by Vibram to Abebe Bikila.* While this factor might appear to weigh in plaintiffs' favor because Vibram uses the word "Bikila," any similarity is not meaningful because consumers are unaware of Abebe Bikila. Moreover, Vibram consistently paired the use of Bikila with its Vibram housemark and its FiveFingers trademark, which "has the potential to reduce or eliminate likelihood of confusion." *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 842 (9th Cir. 2002). Vibram's consumer facing advertisements identified the shoe as the "Vibram FiveFingers Bikila." Rosen Decl., Ex. A. The word Bikila does not appear anywhere on the shoes. Hepburn Decl., Ex. C (Post Dep., 38:24-39:23). The FiveFingers Bikila shoeboxes prominently identify Vibram FiveFingers on the box, while the word Bikila is in small print on a sticker attached to the box. Rosen Decl., Ex. B. Because consumers only encountered the Bikila trademark in the marketplace as associated with the Vibram and FiveFingers marks, this factor weighs in Vibram's favor.

(d)     *Evidence of Actual Confusion.* Despite six years of sales and more than █ ██████ pairs of FiveFingers Bikila shoes sold, plaintiffs fail to present any evidence that a single U.S. consumer was actually confused. *See* Rosen Decl., ¶ 4. When a substantial amount of product has been introduced to the marketplace over an extended period of time, the absence of any evidence of actual confusion "weighs heavily in favor of a finding of no likelihood of confusion." *Gallo*, 2012 WL 273076, at * 17; *see also Cohn*, 281 F.3d at 843

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 11
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

(absence of confusion despite six years of coexistence supported affirmance of summary judgment in defendant's favor). Plaintiffs rely on four inquiry emails that mention Abebe Bikila, which are insufficient as a matter of law to demonstrate actual confusion. *Cohn*, 281 F.3d at 842 n. 7 (several dozen inquiries "too ambiguous" to demonstrate actual confusion); *Mattel, Inc. v. MCA Records, Inc.*, 28 F. Supp. 2d 1120, 1149 (C.D. Cal. 1998) (ambiguous inquiry emails insufficient to establish genuine issue of material fact); *Stonefire Grill*, 987 F. Supp. 2d at 1054 ("a handful of examples of anecdotal confusion" insufficient to support confusion). The strong evidence, established by the Butler survey and Vibram's experience in the marketplace, is that most U.S. consumers simply do not know who Abebe Bikila is and therefore could not be confused. This factor weighs heavily in Vibram's favor.

    *(e)    Marketing Channels Used.* This factor "considers how and to whom the respective parties' goods are sold." *Stonefire Grill*, 987 F. Supp. 2d at 1054. Plaintiffs have not used or promoted the Bikila name commercially in the United States. *Supra*, Section II.B.3. Accordingly, there is no risk of confusion and this factor weighs in Vibram's favor.

    *(f)    Likely Degree of Purchaser Care.* This factor considers whether consumers are likely to be careful in determining who endorses Vibram product. *See Downing*, 265 F.3d at 1008. Butler's survey demonstrates that consumers of the Vibram FiveFingers shoes are interested in the unusual style of the shoe, rather than whether an endorsement exists. Hepburn Decl., Ex. H, ¶ 6. Plaintiffs' expert admitted that ███████████████████ ██████████████████████████████████████████████████. *Id.*, Ex. P (Yalch Dep, 106:1-21). This factor weighs in Vibram's favor.

    *(g)    Vibram's Intent in Selecting the Bikila Name*. This inquiry looks at whether defendants "intended to profit by confusing consumers" concerning an endorsement by Abebe Bikila. *See Downing*, 265 F.3d at 1008. The Bikila name was selected by Vibram's former president, Tony Post, who wanted to honor Abebe Bikila, who he considered to be a great, but obscure runner. Hepburn Decl., Ex. E. Mr. Post had no knowledge of plaintiffs or of their

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

alleged attempts to commercialize Abebe Bikila's name. *Id.*, Ex. C (Post Dep., 15:24-16:8). Vibram also relied on legal counsel in choosing the name, further negating any inference of improper intent. *Cf. M2 Software*, 421 F.3d at 1085 (finding intent factor weighed in favor of defendant where, *inter alia*, defendant's attorney advised that use was non-infringing). This factor weighs in Vibram's favor.

        *(h)*     *Likelihood of Expansion*. Vibram has stopped making the FiveFingers Bikila shoes, and there is no evidence of any concrete plan by plaintiffs to commercialize the Bikila name. This factor weighs in Vibram's favor. *See Stonefire Grill*, 987 F. Supp. 2d at 1056 (no likelihood of confusion in absence of expansion plans).

        *Analysis of Factors*: Considering all factors, there is no evidence that confusion is probable. First, most U.S. consumers do not know who Bikila was, and there is no evidence that any are aware of plaintiffs. On that basis alone, the Court can enter summary judgment because consumers cannot be confused as to affiliation or endorsement if they are unaware of Bikila or plaintiffs. *See Fifty-Six Hope Rd.*, 778 F.3d at 1069 ("Where the plaintiff is not the celebrity himself, an additional factor becomes relevant: the strength of association between the mark and the plaintiff."). Second, plaintiffs do not sell any Bikila goods or market the Bikila name in the U.S., which further decreases the likelihood of confusion. Third, Vibram's consumer-facing advertising references the Bikila trademark in connection with its Vibram housemark and its FiveFingers trademark. Finally, there is no evidence of actual confusion despite the six years that Vibram sold the shoes, and the shoes are no longer being made. Plaintiffs cannot show that it is probable that an appreciable number of consumers are likely to be confused. Their Lanham Act claim should be dismissed.

## C.    Absence of Confusion Is Fatal to Plaintiffs' CPA and Unjust Enrichment Claims.

        Because there is no evidence of a likelihood of confusion, plaintiffs' CPA and unjust enrichment claims must also be dismissed. Where state law claims rely on the same allegations of consumer confusion as a Lanham Act claim, the state-law claims fail with the

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Lanham Act claim. *Cf. Cascade Yarns, Inc. v. Knitting Fever, Inc*., 905 F. Supp. 2d 1235,
1251 n. 8 (W.D. Wash. 2012) (characterizing Lanham Act and analogous state-law claims as
"substantially congruous"); *Campagnolo S.R.L. v. Full Speed Ahead, Inc*., No. C08-1372
RSM, 2010 WL 1903431, at *11 (W.D. Wash. May 11, 2010). Here, plaintiffs rely on the
same consumer confusion allegations to establish elements of their CPA and unjust
enrichment claims as they do for their Lanham Act claim. Second Am. Compl., ¶¶ 39-42, 49.
Because plaintiffs' Lanham Act claim fails for a lack of consumer confusion, so too must its
CPA and unjust enrichment claims.

**D.      Plaintiffs' CPA Claim Must Be Limited to Washington State.**

To the extent plaintiffs' CPA claim is not dismissed in its entirety, it must be limited
to damages for sales within Washington. The CPA applies to "commerce . . . affecting the
people of the state of Washington." RCW §19.86.010(2). The Ninth Circuit recently
confirmed the scope of this provision. *Trader Joe's Co. v. Hallatt*, --- F.3d ---, 2016 WL
4488009, at *12 (9th Cir. Aug., 26, 2016). Where, as here, plaintiffs and defendants do not
reside in Washington, and the allegedly deceptive sales at issue occurred outside Washington,
claims related to those out-of-state sales are not cognizable under the CPA. *Id.*; *see also*
Second Am. Compl., ¶¶ 1-4, 14-15. Vibram's out-of-state sales did not "affect the people of
the state of Washington" as the CPA requires. *See Trader Joe's*, 2016 WL 4488009, at * 12
(finding no in-state effects for deception occurring in Vancouver, B.C.). Plaintiffs' CPA claim
must be dismissed as to sales outside Washington.

**E.      Plaintiffs' Damages Theories Are Speculative and Unsupported by Law.**

**1.      Plaintiffs Are Not Entitled to Royalties Because They Have No Licensing History.**

Plaintiffs' request for a reasonable royalty must be denied because it is speculative.
Courts regularly prohibit the recovery of a reasonable royalty in Lanham Act cases where the
plaintiff does not have an established history of licensing. *See Quia Corp. v. Mattel, Inc.*, No.
C10-1902 JF (HRL), 2011 WL 2749576, at *6-7 (N.D. Cal. Jul. 14, 2011) (entering summary

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 14
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

judgment on reasonable royalty claim in absence of licensing history); *South Cone, Inc. v. Timex Corp.*, No. 99-CV-2384-L(AJB), 2002 WL 34450329, at * 1 (S.D. Cal., Apr. 10, 2002) (precluding expert from testifying as to reasonable royalties for party lacking licensing history); *Trovan, Ltd. v. Pfizer, Inc.*, No. CV-98-00094 LGB MCX, 2000 WL 709149, at *1 (C.D. Cal. May 23, 2000) (vacating jury's reasonable royalty award as speculative where plaintiffs lacked "any basis in fact" to show willingness to license). Plaintiffs have never licensed the Bikila name in the United States and have indicated an unwillingness to do so unless they were satisfied that a company understood Bikila's accomplishments and "glory." Hepburn Decl., Ex. N (T. Abebe Dep., 86:15-18, 104:11-105:16). Under such circumstances, reasonable royalties are speculative and must be denied.

**2. Plaintiffs Are Not Entitled to Disgorgement of Vibram's Profits.**

Plaintiffs cannot obtain a disgorgement of Vibram's profits on their Lanham Act and WPRA claims because they have no evidence that Vibram's profits are attributable to the use of the Bikila name. In calculating awardable profits under 15 U.S.C. § 1117(a), "[t]he trademark holder has the burden to prove the defendant infringer's gross revenue from the infringement. Then the burden shifts to the defendant infringer to prove expenses that should be deducted from the gross revenue to arrive at the defendant infringer's lost profits." *Fifty-Six Hope Rd.*, 778 F.3d at 1076 (internal citations omitted, emphasis added). The Ninth Circuit model jury instruction on award of profits further clarifies this standard: "the plaintiff is entitled to any profits earned by the defendant that are attributable to the infringement, which the plaintiff proves by a preponderance of the evidence. . . ." 15.26 Trademark Damages—Defendant's Profits, *Manual of Model Civil Jury Instruction for the District Courts of the Ninth Circuit* (2008) (emphasis added). Once a plaintiff proves that profits earned by the defendant are attributable to the Lanham Act violation then, and only then, does the burden shift to the defendant to establish the portion of the profit attributable to other factors. *Nat'l Prods., Inc. v. Gamber-Johnson LLC*, 734 F. Supp. 2d 1160, 1166 (W.D. Wash.

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 15
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

2010). The WPRA similarly limits awardable profits to only those "profits that are attributable to the infringement."  R.C.W. § 63.60.060(2).

Plaintiffs cannot establish that any of Vibram's profits were attributable to the alleged infringement. ██████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

██████   This falls far below plaintiffs' burden to show that profits are attributable to the alleged infringement, and plaintiffs' claim for Vibram's profits should be dismissed.

As an additional, independent basis to deny disgorgement of profits, there can be no disgorgement without <u>both</u> a willful intent to capitalize and an <u>established</u> mark. *Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1405-06 (9th Cir. 1993). Here, neither element is met. Vibram did not act willfully as a matter of law because it relied on the advice of counsel in choosing the Bikila name. *See* Dkt. 49, at 16-18. Further, because plaintiffs' mark is a "relatively obscure name," disgorgement would be an improper penalty to Vibram and a windfall to plaintiffs. *See Fitbug Ltd. v. Fitbit, Inc.*, No. 13-1418 SC, 2015 WL 3543116, at *3 (N.D. Cal. June 5, 2015). Plaintiffs' request for Vibram's profits should be denied.

**3. Plaintiffs Are Not Entitled to Damages for Corrective Advertising.**

Plaintiffs cannot recover the ████████ they seek for Lanham Act corrective advertising damages because they have no evidence of any injury, let alone one that could be corrected through advertising. Corrective advertising awards are compensatory damages that are intended to pay advertising costs necessary to "restore the value plaintiff's trademark has lost due to defendant's infringement." *Binder v. Disability Grp., Inc.*, 772 F. Supp. 2d 1172,

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 16
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1181 (C.D. Cal. 2011) (quoting *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1995)). The award must be based on "non-speculative evidence that goodwill and reputation—that is, the value of [a] mark—was damaged in some way." *Quia*, 2011 WL 2749576, at *5. Corrective advertising is appropriate where there is evidence that consumers who had mistaken thoughts regarding a plaintiff's trademark as a result of a defendant's actions could have those misimpressions corrected via advertising. *See Binder*, 772 F. Supp. 2d at 1181. Plaintiffs' damages expert ███████████████████████████████████████ ████████████████████████████████████████████. *See generally* Hepburn Decl., Ex. W; Ex. V (Morones Dep., 177:25-178:25). Given the lack of any evidence that U.S. consumers even recognize the Bikila name, it is speculative to assume that harm to the Bikila name occurred or that advertising could correct any misimpressions. Plaintiffs' claim for corrective advertising damages should be dismissed.

## F.     Plaintiffs' WPRA Claim Should Be Dismissed Because There Is No Evidence that Abebe Bikila's Name Had Value at the Time of His Death.

Plaintiffs' WPRA claim fails because there is no evidence that Bikila's name had commercial value at the time of his death. The WPRA provides a property right in a person's name for ten years after death for "deceased individuals" and 75 years after death for "deceased personalities." RCW § 63.60.040. A "deceased personality" is someone whose name had "commercial value at the time of his or her death." RCW § 63.60.020(2).

Plaintiffs' experts have not opined that Bikila's name had commercial value at the time of his death. Plaintiffs admit that Bikila, an amateur athlete, <u>could not</u> commercialize his name during his lifetime. Hepburn Decl., Ex. T (Y. Giorgese Dep., 14:16-22). The first time plaintiffs were offered money for the use of Bikila's name was approximately a decade <u>after</u> his death, and that deal never came to fruition. *Id.*, Ex. N (Tsige Abebe Dep., 87:12-20; 92:10-21). Plaintiffs concede that, under Ethiopian law, when Abebe Bikila was competing, "there were only amateur sportman." *Id.*, Ex. N (Tsige Abebe Dep., 123:9-22).

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 17
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Unlike today—when professional athletes regularly appear in the Olympics and athletes frequently obtain sponsorships—at the time of Bikila's death, commercial activity was strictly forbidden. It was not until the 1980s that the Olympics first permitted professional athletes to compete on a limited basis. Hepburn Decl., Ex. U. While changes in Olympic policies have allowed some athletes to commercialize their Olympic success in more recent years, there is no evidence that there was any market for endorsements by Olympic athletes at the time of Abebe Bikila's death in 1973. In the absence of this evidence, Abebe Bikila is a "deceased individual" and, thus, a property right in his name existed for only ten years after his death. RCW § 63.60.040. Because Abebe Bikila died in 1973, any property right that once existed for him as a deceased individual has expired and the WPRA claim must be dismissed.

## G. The WPRA Is Unconstitutional.

The WPRA is unconstitutional because Washington State cannot regulate international commerce, and has no interest in, or authority to control, the property rights of an Ethiopian citizen who has no connection to Washington whatsoever. This Court should enter summary judgment on Vibram's declaratory judgment counterclaim that the WPRA is unconstitutional.

### 1. Background on the WPRA and Constitutional Litigation.

The WPRA was enacted in 1998 to declare that "[e]very individual or personality has a property right in the use of his or her name, voice, signature, photograph or likeness." RCW § 63.60.010. In 2007, the Ninth Circuit affirmed a Western District of Washington decision that the law of a deceased personality's last place of domicile, rather than the WPRA, determines if and how that individual's personality rights transferred upon his death. *Experience Hendrix, LLC v. The James Marshall Hendrix Found.*, 240 Fed. Appx. 739, 740 (9th Cir. 2007). This decision required application of New York law to the personality rights of former Washington resident Jimi Hendrix, and resulted in no such rights surviving his death. *Id.* Likely in response to this decision, the Washington Legislature amended the WPRA in 2008 to purportedly create a personality right for every person in the world, regardless of

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

place of domicile or personal connection to Washington. RCW §§ 63.60.010, 63.60.030(1). Taking its reach even further, the amended WPRA authorizes transfers by intestate succession of the Washington statutory personality right, even if the jurisdiction where the individual died did not recognize such a right. RCW § 63.60.030(1)(a).

In 2011, this Court addressed the constitutionality of the 2008 amendments. *Experience Hendrix, L.L.C. v. Hendrixlicensing.com, Ltd.,* 766 F. Supp. 2d 1122, 1133 (W.D. Wash. 2011). There, plaintiff Experience Hendrix, L.L.C. ("Experience"), a Washington entity, brought suit against Andrew Pitsicalis and HendrixLicensing.com, LTD (collectively, "Pitsicalis") who distributed or sought to distribute items bearing the name or likeness of Jimi Hendrix. *Id.* at 1128. Concerned that Experience might use the WPRA to stop sales of its goods in Washington, Pitsicalis sought a judicial declaration that the amendments violated several provisions of the U.S. Constitution, including the Due Process Clause of the Fourteenth Amendment and the Commerce Clause. *Id.* at 1133.

With reasoning explained further below, Judge Zilly held that the 2008 WPRA amendments' choice of law provisions violate the Due Process Clause, the Full Faith and Credit Clause, and the Dormant Commerce Clause of the U.S. Constitution. *Experience Hendrix,* 766 F. Supp. 2d at 1134-43. The Ninth Circuit reversed, holding that the WPRA is not unconstitutional "as applied to the narrow circumstances presented" in the *Experience Hendrix* case. 762 F.3d at 833. The Ninth Circuit noted that the facts presented involved only Experience's "interference with the sale in Washington of Pitsicalis-licensed, unofficial but non-infringing goods bearing Hendrix's likeness, as well as Pitsicalis' 'reasonable apprehension' that [Experience] will attempt to stop such targeted sales in Washington in the future." *Id.* at 836 (emphasis added). On these limited claims, the Ninth Circuit concluded that the WPRA did not offend the U.S. Constitution because the State of Washington had sufficient contacts—being the jurisdiction where Jimi Hendrix was born, raised, and eventually buried— to apply the WPRA fairly and constitutionally to Washington sales. *Id.*

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 19
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Here, plaintiffs lack the very connections to Washington that sustained the constitutionality of the WPRA in *Experience Hendrix*: the alleged heirs of Abebe Bikila, an Ethiopian athlete who never set foot in Washington, who are not and have never been residents of Washington, seek damages for sales, mostly made outside of Washington, by a non-Washington company. Unlike in *Experience Hendrix*, there is no legitimate Washington nexus here. This case presents circumstances in which the WPRA violates the following provisions of the U.S. Constitution: (i) the Supremacy Clause (art. VI, cl. 2), a clause not considered in *Experience Hendrix*; (ii) the Due Process Clause (amend. XIV); and (iii) the Commerce Clause (art. I, § 8, cl. 3).

**2. The WPRA Violates the Supremacy Clause.**

The WPRA's purported application to foreign jurisdictions unconstitutionally inserts Washington state law into the field of international relations, which is the sole province of the federal government. The Supremacy Clause directs that the "Constitution, and the Laws of the United States . . . shall be the supreme Law of the Land . . . Laws of any State to the Contrary notwithstanding." U.S. Const. art. VI. The supremacy of federal law "in the general field of foreign affairs . . . is made clear by the Constitution" and has been "given continuous recognition" by the Supreme Court. *Hines v. Davidowitz*, 312 U.S. 52, 62–63 (U.S. 1941) ("No state can add to or take from the force and effect of [a federal] treaty or statute" touching on the "rights, privileges, obligations or burdens of aliens[.]"). This aspect of the Supremacy Clause, known as the foreign affairs doctrine, dictates that "even in the absence of any express federal policy, a state law still may be preempted under the foreign affairs doctrine if it intrudes on the field of foreign affairs without addressing a traditional state responsibility." *Movsesian v. Victoria Versicherung AG*, 670 F.3d 1067, 1072 (9th Cir. 2012)

The WPRA, which lacks any limitation for domicile or citizenship, purports to create commercial personality rights for foreign nationals, even where the individual in question has had no contact whatsoever with the State of Washington and where there is no Washington

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

interest involved. The Supremacy Clause was not at issue in *Experience Hendrix*, and is therefore a matter of first impression before this Court. Here, the conflict with the Supremacy Clause is not hypothetical. The United States can and does regulate intellectual property rights on an international level, as well as trade and commerce engagements with Ethiopia. *See, e.g.*, Paris Convention for the Protection of Industrial Property, Mar. 20, 1883, 21 U.S.T. 1583, 828 U.N.T.S. 305; Berne Convention for the Protection of Literary and Artistic Works, Sept. 9, 1886, 25 U.S.T. 1341, 828 U.N.T.S. 221; Treaty of Amity and Economic Relations Between the United States of America and Ethiopia, U.S. - Eth., Sept. 7, 1951, 4 U.S.T. 2134, T.I.A.S. No. 2864. By attempting to apply the WPRA to an individual whose personality rights would otherwise be governed by the laws of Ethiopia, U.S. federal law, or international treaties, plaintiffs invoke the WPRA's unconstitutional overreach. Although no federal law governs international personality rights, the "general foreign affairs power implies that, even when the federal government has taken no action on a particular foreign policy issue, the state generally is not free to make its own foreign policy on that subject." *Movsesian*, 670 F.3d at 1072 (invalidating California statute that purported to provide redress to Armenian genocide victims by subjecting foreign insurers to lawsuits in California). The WPRA's attempt to legislate the rights of a foreign individual in an area of exclusive federal jurisdiction violates the Supremacy Clause.

### 3. The WPRA, as Applied, Violates the Due Process Clause.

The WPRA provisions bestowing personality rights on an Ethiopian citizen who died in Ethiopia in 1973 and never set foot in Washington State in his lifetime offend the Due Process Clause of the U. S. Constitution by arbitrarily and unfairly substituting Washington law for the law of competent foreign jurisdictions. The Fourteenth Amendment's due process guarantee means, among other things, that "statutory directives" requiring a state to apply only its laws and ignore conflicting laws of other states and nations will violate the Due Process Clause unless the state can show "a significant contact or significant aggregation of

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 21
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 818 (1985).

The WPRA's mandatory choice of law provision is arbitrary and fundamentally unfair in this case because it purports to apply Washington law to an individual with whom Washington State had no contacts whatsoever. For a statute to be constitutional, there must be <u>significant</u> contacts between the deceased individual and the state seeking to apply its personality rights statute to that individual. *Phillips Petroleum*, 472 U.S. at 818; *see also, Matthews v. Nat'l Football League Mgt. Council*, 688 F.3d 1107, 1116 (9th Cir. 2012) (holding California could not apply its workers compensation law to a football player that did not specify any injury occurring in California, even though his team did play in California).

Here, where Washington has no connection to the deceased personality and only attenuated connections to any of the parties or allegations involved, the WPRA is unconstitutional. Unlike the personality at issue in *Experience Hendrix*, Abebe Bikila was born, raised, and died in Ethiopia and plaintiffs do not allege that he ever had any contact with Washington. None of the parties in this case are Washington residents, nor do any of them allege any connection to Washington beyond this case. Further, plaintiffs do not limit their WPRA claim to narrow damages stemming from Washington sales. Second Am. Compl., ¶¶ 32-37. The sale of goods by a non-Washington entity that allegedly infringe on the personality rights of a non-Washington individual and his alleged non-Washington heirs does not give Washington the necessary contacts under the Due Process Clause to justify the application of the WPRA. *See Experience Hendrix*, 762 F.3d at 836. In the words of Judge Zilly, "[t]o select, as the WPRA suggests, the law of a state to which the individual or personality is a stranger, constitutes no less random an act than blindly throwing darts at a map on the wall." *Experience Hendrix*, 766 F. Supp. 2d at 1138.

In addition, plaintiffs have demonstrated one of the many negative aspects of laws with unconstitutional jurisdictional overreach: forum shopping. The Due Process Clause

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 22
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

limits a state's ability to apply its own law to foreign transactions in part because with no such limitation, plaintiffs would survey the 50 states, find the most favorable law, and file suit in that state. "If a plaintiff could choose the substantive rules to be applied to an action ... the invitation to forum shopping would be irresistible." *Phillips Petroleum*, 472 U.S. at 820. Forum shopping is exactly what happened here. Despite a total lack of connection between Washington and the parties and transactions involved in this case, plaintiffs brought their cause of action in this forum to take advantage of the WPRA. The WPRA purports to give them rights where they would otherwise have none. It is arbitrary and fundamentally unfair to allow the WPRA to supplant the law of a jurisdiction where the personality in question was born, lived, and died. *Phillips Petroleum*, 472 U.S. at 820. Under the circumstances presented in this case, this Court should declare the provisions of the WPRA identified in Vibram's proposed order unconstitutional and void pursuant to the Due Process Clause.

### 4. The WPRA, as Applied, Violates the Dormant Commerce Clause.

The WPRA, which seeks in this case to govern a non-Washington resident's personality rights with respect to the sale of shoes by a non-Washington company, the vast majority of which took place entirely outside Washington, conflicts with the Dormant Commerce Clause of the U.S. Constitution and should be held invalid. The Commerce Clause of the U.S. Constitution grants Congress the power to "regulate commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Supreme Court has interpreted the Commerce Clause "to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce." *Oregon Waste Sys., Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994). Courts sometimes refer to this doctrine as the Dormant Commerce Clause. *Black Star Farms LLC v. Oliver*, 600 F.3d 1225, 1230 (9th Cir. 2010). The Dormant Commerce Clause constrains states from engaging in extraterritorial regulation of commerce. *Healy v. Beer Inst.*, 491 U.S. 324, 336 (1989).

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 23
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

The WPRA, which lacks any limitation for domicile or citizenship, runs afoul of the Dormant Commerce Clause. *Healy*, 491 U.S. at 336. By attempting to govern personality rights regardless of any Washington connection to the deceased personality, parties, or alleged violations, the WPRA creates a Washington State-centered system of personality rights that usurps the Commerce Clause's delegation to Congress and unjustifiably discriminates against citizens dealing in personality rights in other states. *Experience Hendrix*, 766 F. Supp. 2d at 1142. This encroachment on the ability of other states, which may actually have a connection to the personality or circumstances presented in a particular case, to be governed by their own intellectual property laws is prohibited by the Dormant Commerce Clause. *Healy*, 491 U.S. at 336 (invalidating Connecticut statute that required out-of-state shippers of beer to affirm that their prices for Connecticut wholesalers were no higher than the prices in bordering states on the grounds that the statute controlled commerce taking place wholly outside of Connecticut).

The specific, non-speculative facts of this case demonstrate exactly how application of the WPRA here impermissibly encroaches on interstate commerce. In sharp contrast to the circumstances in *Experience Hendrix*, neither Abebe Bikila nor his alleged heirs had any relationship to Washington State. Plaintiffs acknowledge that Vibram is a non-Washington corporation and its only connection to Washington is its nationwide sale of products. Second Am. Compl., ¶¶ 14-15. The vast majority of the allegedly infringing sales in this case took place outside of Washington, a fact confirmed by a comparison of plaintiffs' expert's calculations of nationwide versus Washington sales. Hepburn Decl., Ex. W (Morones Report, at 4). The WPRA's asserted control over Abebe Bikila's personality rights impermissibly burdens Vibram's commercial activities occurring wholly outside of the State of Washington. The Dormant Commerce Clause does not allow this type of restraint on interstate trade. Thus, the WPRA provisions identified in Vibram's proposed order should be stricken as unconstitutional in violation of the Dormant Commerce Clause.

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# IV.    CONCLUSION

For the foregoing reasons, plaintiffs' claims should be dismissed.

DATED this 13th day of October, 2016.

K&L GATES LLP

By:  /s/Jeffrey C. Johnson
Jeffrey C. Johnson, WSBA # 23066
Joanne M. Hepburn, WSBA # 32841
Kendra H. Nickel-Nguy, WSBA # 45520
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Tel:  (206) 623-7580
Fax: (206) 623-7022
Email:    jeff.johnson@klgates.com
          joanne.hepburn@klgates.com
          kendra.nickel-nguy@klgates.com

Attorneys for Defendants
Vibram USA, Inc. and
Vibram FiveFingers LLC

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

# CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the registered CM/ECF users in this action.

K&L GATES LLP

By:  /s/Jeffrey C. Johnson
Jeffrey C. Johnson, WSBA # 23066
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
Tel:  (206) 623-7580
Fax: (206) 623-7022
Email:  jeff.johnson@klgates.com

Attorneys for Defendants
Vibram USA, Inc. and
Vibram FiveFingers LLC

DEFENDANTS' SECOND MOTION
FOR SUMMARY JUDGMENT - 26
Case No. 3:15-cv-05082-RBL

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022