HONORABLE RONALD B. LEIGHTON

1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

8

TEFERI ABEBE BIKILA, et al.,

9

                 Plaintiffs,

10

    v.

11

VIBRAM USA INC., et al.,

12

                Defendants.

13

CASE NO. C15-5082-RBL

ORDER

14        THIS MATTER is before the Court on defendants' motion for summary judgment [Dkt.

15 #49]. This case involves a running shoe Vibram named after Abebe Bikila, the late Ethiopian

16 Olympic marathoner. Vibram trademarked the name without requesting or receiving his heirs'

17 permission. Bikila's heirs claim Vibram violated the Lanham Act (15 U.S.C. § 1125(a)),

18 Washington's Personality Rights Act (RCW 63.60 *et seq.*), and the Washington Consumer

19 Protection Act (RCW 19.86.020). They also assert a state law unjust enrichment claim.

20        Vibram seeks summary judgment on the Lanham Act claim, arguing that it is barred by

21 laches. It seeks summary judgment on the state law claims, arguing they are time-barred. It also

22

23

24

ORDER - 1

argues the plaintiffs lack standing to assert Lanham Act, Washington Consumer Protection Act, or unjust enrichment claims[1].

Bikila's widow and his three surviving children are his sole heirs and the plaintiffs in this case. Yewebdar W. Giorgese, his widow, is an Ethiopian citizen residing in Ethiopia. Yetnayet Abebe Bikila and Tsige Abebe, his son and daughter, also reside in Ethiopia and are German and American citizens, respectively. Teferi Abebe Bikila, another son, is an American citizen residing in Oregon. Vibram disputes that Ethiopian law permits heirs to inherit publicity rights, but it does not dispute that the named plaintiffs—the Bikilas—are Abebe Bikila's heirs to the extent the law permits.

## I. BACKGROUND

**A. Abebe Bikila**

Running barefoot after sponsors could not find him shoes that fit, Ethiopian runner Abebe Bikila achieved instant fame when he won marathon gold at the 1960 Rome Olympic Games. Bikila cemented his legendary status when he won the 1964 Olympic marathon in Tokyo (this time with shoes) and seemed poised to achieve even greater success, though a last-minute injury forced him to sit out the 1968 games. Tragedy struck in 1969 when a car crash left him paralyzed. Bikila died from complications four years later, leaving behind his wife and four children.

Although tragedy cut short his career, Bikila is remembered as one of the great runners of the twentieth century and probably the most famous barefoot runner. A stadium in Addis Ababa is named for him. A 2009 Ethiopian biopic, *Atletu* (*The Athlete*), traces Bikila's running career—

---

[1] Vibram has since filed a second, "substantive" motion for summary judgment [Dkt. # 77] .Given the resolution of this "procedural" Motion, that Motion is **DENIED** as moot.

though the filmmakers did not seek the family's permission, and the family unsuccessfully sought to block its release. Outside Ethiopia, Bikila has been honored as the namesake of numerous marathons, including one in Washington, D.C., and the New York Road Runners have presented the Abebe Bikila Award annually to long-distance runners since 1978. Comedian Robin Williams referenced Bikila in a 2010 stand-up routine, and family members twice met Japanese Prime Minister Shinzo Abe in connection with the 50th anniversary of the Tokyo Olympics.

The Bikilas have attempted to safeguard and profit from Bikila's legacy. From 1980 to 2001, they operated a sporting goods store bearing his name in Ethiopia, and they have helped sponsor Ethiopia's Abebe Bikila International Marathon since 1985. With the family's permission, the Ethiopian government has also issued stamps and lottery tickets bearing Bikila's image. Tsige Abebe wrote a book about her father and claims to have sold copies in Atlanta during the 1996 Olympics (though she has not provided documentary evidence to support this claim). Members of the family started monitoring the Internet for unauthorized uses of Bikila's likeness in 2003, and by 2009 conducted biweekly Web searches for his name. In 2007, Japanese beverage company Suntory paid the family €200,000 to use Bikila's name and image in a television advertisement. The Bikilas argue they entertained (and denied) 2007 and 2008 requests from Nike, Visa, and Coca-Cola, among others, for permission to use Bikila's likeness in TV advertising, though they have lost access to the email accounts they used for these negotiations. Since 2010, they have maintained a website devoted to telling Bikila's story.

**B.  Vibram FiveFingers Bikila**

Defendant Vibram (through its subsidiary, defendant Vibram FiveFingers) introduced the FiveFingers shoe line in 2006. FiveFingers shoes are unique in that they have individual toe

compartments, much like gloves for the feet. They are designed to mimic the experience of being barefoot. The shoes grew popular with "barefoot running" adherents who sought minimalist shoes, and in 2009 VFF sought to capitalize on this popularity by designing a model specifically for runners.

Tony Post, then VFF's CEO, knew about Abebe Bikila's barefoot running legacy and identified "Bikila" as a potential name for the new shoe. He contacted outside counsel, Curt Krechevsky of Cantor Colburn LLP, to explore whether VFF could trademark the Bikila name for use in connection with footwear, clothing, and headwear, among other uses. Krechevsky conducted a trademark search and concluded the "Bikila" mark was available with reasonable risk, "subject to any potential claims based on publicity rights from heirs, assignees, or licensees of the deceased individual Abebe Bikila." Hepburn Decl., Dkt. #52, Ex. D. There is no evidence that Post or anyone else at VFF investigated further.

VFF applied to register the Bikila trademark with the U.S. Patent and Trademark Office (PTO) on May 19, 2009. The PTO published the trademark for opposition in its Official Gazette on September 29, 2009. VFF released the Bikila running shoes in April 2010. Three months later (July 20), after receiving no opposition, the PTO registered the Bikila trademark.

The Bikilas actually knew about the VFF Bikila no later than January 10, 2011, when Yetnayet Bikila emailed Teferi Bikila requesting him to seek advice on the family's rights from a U.S. lawyer. Teferi and Tsige Bikila contacted three attorneys to discuss suing Vibram but did not retain any of them. From 2012 to 2014, the Bikilas continued to discuss legal action against Vibram but did not contact other attorneys, and they did not attempt to inform Vibram of their objections to its use of the Bikila name.

While the Bikilas considered their options, Vibram continued marketing the VFF Bikila. It sponsored a showing of the *Atletu* documentary at the St. Louis Film Festival in 2011, and it posted at least one reference to Abebe Bikila on Twitter. VFF also introduced several other shoe models using the Bikila name: the Bikila LS in spring 2011, the Bikila EVO in spring 2014, and the Bikila EVO WP in fall 2014. Vibram and its parent company, Italy's Vibram S.p.A., registered the "Bikila" trademark in other countries, and numerous personnel left VFF during this time—including CEO Tony Post.

**C.  2015 Lawsuit**

The Bikilas sued in 2015. They seek damages, an injunction preventing Vibram from using the Bikila name, and attorneys' fees. They claim Vibram violated the Lanham Act, 15 U.S.C. § 1125(a), by creating a false designation of origin likely to confuse and deceive the consuming public. The Bikilas also claim Vibram infringed on Abebe Bikila's personality rights, which they inherited, in violation of the Washington Personality Rights Act (WPRA), RCW 63.60 *et seq*. They claim Vibram's actions are unfair or deceptive acts that violate the Washington Consumer Protection Act (WCPA), RCW § 19.86.020. Finally, they seek restitution under the common law of unjust enrichment.

Vibram moves for summary judgment on each claim. It argues the plaintiffs unreasonably delayed in filing their Lanham Act claim, subjecting Vibram to evidentiary and economic prejudice, and accordingly that their federal claim is barred by laches. The plaintiffs argue that Vibram's unclean hands and willful infringement preclude a laches defense. Vibram claims it relied in good faith on the advice of counsel. The Bikilas also argue that a jury could find their delay in filing reasonable under the circumstances, and that their delay in filing has not prejudiced Vibram.

1    Vibram argues that the Bikilas' state law claims are time-barred and that there is no basis

2    to apply a "continuing wrong" theory to circumvent this defense. The Bikilas argue that a jury

3    should evaluate whether they should have discovered the basis for a state cause of action before

4    the applicable limitations periods expired.

5    Vibram also argues that the Bikilas do not have standing to assert Lanham Act, WCPA,

6    or unjust enrichment claims. The plaintiffs seek summary judgment on their standing to assert

7    Lanham Act claims, or under Ethiopian law, claiming they have a commercial interest in Abebe

8    Bikila's name and likeness.

9    **II. DISCUSSION**

10   **A.  Summary Judgment Standard**

11   Summary judgment is proper "if the pleadings, the discovery and disclosure materials on

12   file, and any affidavits show that there is no genuine issue as to any material fact and that the

13   movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether

14   an issue of fact exists, the Court views all evidence in the light most favorable to the nonmoving

15   party and draws all reasonable inferences in that party's favor. *Anderson v. Liberty Lobby, Inc*.,

16   477 U.S. 242, 248–50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996).

17   A genuine issue of material fact exists where there is sufficient evidence for a reasonable

18   fact-finder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether

19   the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

20   one-sided that one party must prevail as a matter of law." *Id*. at 251–52. The moving party bears

21   the initial burden of showing that there is no evidence which supports an element essential to the

22   nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has

23   met this burden, the nonmoving party then must show that there is a genuine issue for trial.

24

1   *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine

2   issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477

3   U.S. at 323–24.

4   **B.  Laches as a Defense to a Lanham Act Claim.**

5        Vibram claims that the Bikilas' Lanham Act claim is barred as a matter of law by their

6   unreasonable delay in bringing it, causing it prejudice. The Bikilas claim that laches cannot apply

7   because Vibram's infringement was willful.

8        Laches "embodies the principle that a plaintiff cannot sit on the knowledge that another

9   company is using its trademark, and then later come forward and seek to enforce its rights." It is

10  available as an equitable defense to trademark claims. *Internet Specialties W., Inc. v. Milon-*

11  *DiGiorgio Enterprises, Inc.*, 559 F.3d 985, 989–90 (9th Cir. 2009). To establish a laches defense,

12  a defendant must prove both (1) unreasonable delay and (2) resulting prejudice. *See Danjaq LLC*

13  *v. Sony Corp.*, 263 F.3d 942, 951 (9th Cir. 2001). However, a party with unclean hands may not

14  assert laches. *Jarrow Formulas, Inc. v. Nutrition Now, Inc.*, 304 F.3d 829, 841 (9th Cir. 2002). A

15  plaintiff may demonstrate the defendant has unclean hands by showing he or she willfully

16  infringed on the plaintiff's mark. *See Danjaq*, 263 F.3d at 956–57.

17      1.  <u>Deliberate Infringement</u>

18        The Bikilas argue that Vibram willfully infringed on their rights and thus has unclean

19  hands, precluding it from asserting the equitable defense of laches. Specifically, they argue that

20  Vibram did not rely in good faith on the advice of counsel: Vibram's attorneys specifically told it

21  that going forward would be subject to "any potential claims based on publicity rights from heirs,

22  assignees, or licensees of the deceased individual Adebe Bikila." They point to similar internal

23

24

1    discussions which, they claim, find support a jury's finding that Vibram knew there were other

2    potential rights.

3            The deliberate infringement bar to laches derives from the unclean hands doctrine, which

4    "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to

5    the matter in which he seeks relief." *Jarrow*, 304 F.3d at 841 (quoting *Precision Instrument Mfg.*

6    *Co. v. Auto. Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). In the copyright context, the Ninth

7    Circuit has adopted a willful infringement standard to determine unclean hands—creating a

8    laches exception when conduct occurs "with knowledge that the defendant's conduct constitutes

9    copyright infringement." *Danjaq*, 263 F.3d at 957 (quoting *Columbia Pictures Television v.*

10   *Krypton Broad.*, 106 F.3d 284, 293 (9th Cir.1997)). Similar principles apply to trademark, as

11   other districts in this circuit have concluded. *See, e.g.*, *FLIR Sys., Inc. v. Sierra Media, Inc.*, 965

12   F.Supp.2d 1184, 1210 (D. Or. 2013); *accord Fitbug Ltd. v. Fitbit, Inc.*, 78 F.Supp.3d 1180, 1195

13   (N.D. Cal. 2015). Thus, to assert an unclean hands defense on the basis of willful infringement,

14   the Bikila Family must show Vibram knew its conduct constituted trademark infringement.

15           A California District court inferred willfulness from evidence showing a defendant acted

16   with "an aura of indifference" to a plaintiff's trademark rights, or with willful blindness to facts

17   she had cause to suspect would put her on notice that she was infringing another's trademarks.

18   *Philip Morris USA Inc. v. Liu*, 489 F. Supp. 2d 1119, 1123 (C.D. Cal. 2007); *see also Louis*

19   *Vuitton S.A. v. Lee*, 875 F.2d 584, 590 (7th Cir.1989) ("[I]t is enough . . . that the defendant

20   failed to inquire . . . because he was afraid of what the inquiry would yield.").

21           The Bikilas claim that Vibram and its attorneys knew that they had claims and that it

22   acted in conscience disregard of them. Vibram argues that it relied in good faith on the advice of

23   counsel, as a matter of law, and that that reliance is a defense to the claim it acted willfully.

24

1    This is a close question.

2    Vibram obtained a certificate of registration from the PTO for the Bikila trademark. The

3    Bikilas did not object. In doing so, it sought, obtained, and relied on the informed advice of its

4    attorney, Curt Krechevsky. It is true that Krechevsky did not advise it that there were not and

5    could not be impediments to their efforts to obtain trademark protection in the Bikila name. But

6    competent attorneys rarely give those sorts of blanket blessings—instead, Krechevsky, armed

7    with Vibram's full disclosure of facts, correctly advised that here were no current competing

8    marks, but there could be a publicity rights claim. It is undisputed that Krechevsky did a "full

9    search" to determine whether the term Bikila was available to trademark.

10    Vibram correctly points out that while this may be factual support for their *publicity*

11    *rights* claim, it does not support their Lanham Act claim, which is based instead on "confusion to

12    the consuming public." It claims that to establish the willfulness required to defeat Vibram's

13    laches defense, the Bikilas must show "fraudulent intent with respect to its registration and use of

14    the Bikila trademark. *Citing Jarrow*, 304 F.3d at 841-42. It argues that laches applies unless the

15    Bikilas can demonstrate that it had knowledge that its conduct *constituted trademark*

16    *infringement*—not that it might violate the Bikilas publicity rights.

17    Krechevsky's advice was not erroneous, and Vibram did not ignore it. *See State Indus.*

18    *Inc. v. Mor-Flo Indus. Inc.*, 948 F.2d 1573 (Fed, Cir. 1991). Vibram relied on its attorneys'

19    advice, in good faith. There is no evidence from which a jury could find that Vibram acted in

20    anything short of good faith.

21    Vibram's assertion of laches as a defense to the Bikilas' Lanham Act claim is not barred

22    by its own conduct.

23

24

1    2. <u>Delay</u>

2        Two factors determine whether the plaintiffs' delay in bringing suit supports a laches

3 defense. First is "the length of delay, which is measured from the time the plaintiff knew or

4 should have known about its potential cause of action." *Jarrow Formulas, Inc. v. Nutrition Now,*

5 *Inc.*, 304 F.3d 829, 838 (9th Cir. 2002). Second, the Court must "decide whether the plaintiff's

6 delay was unreasonable." *Id.*

7        *a. Length*

8        The Bikilas knew or should have known about their potential Lanham Act claim for more

9 than five years before they filed suit. The limitations period begins to run from the time a

10 plaintiff knew or should have known about his or her claim. *Id.* at 837. A court may consider

11 actual or constructive knowledge in making this determination. *Grupo Gigante Sa De CV v.*

12 *Dallo & Co., Inc.*, 391 F.3d 1088, 1102 (9th Cir. 2004) (emphasis omitted).

13       Registration of a trademark on the principal register constitutes constructive notice of a

14 registrant's claim. 15 U.S.C. § 1072. The Bikilas had constructive notice of Vibram's claim on

15 July 20, 2010, when the PTO registered the Bikila mark on the principal register.

16       The Bikilas had actual knowledge of the potential infringement of their rights no later

17 than January 10, 2011 when one of them sent an email to another, including a link to Vibram's

18 "Bikila" website[2] and discussing exploring the legal options triggered by it.

19       *b. Reasonableness*

20       To determine whether a delay is unreasonable, court looks to the limitations period for an

21 analogous action at law. *See Jarrow*, 304 F.3d at 838. Where a plaintiff files suit outside an

22 _____

23       [2] Vibram points out that the Bikilas initially denied this earlier knowledge, and claimed
instead they did not have actual notice of Vibram's mark until October 2014. The email
24 demonstrating prior knowledge surfaced in discovery.

1   analogous statutory limitations period, there is a rebuttable presumption that both elements of a

2   laches defense are satisfied. *Id*. at 837. The analogous limitations period in Washington is three

3   years, for trade name infringement. *See* RCW 4.16.080(2).

4         The Bikilas did not file their claim within this period. They ask the Court to apply the *E-*

5   *Systems* six part balancing test to evaluate the reasonableness of its delay in filing suit. *See E-*

6   *Systems, Inc. v. Monitek, Inc*., 720 F.2d 604 (9th Cir. 1983): (1) the strength and value of the

7   trademark rights asserted; (2) the plaintiff's diligence in enforcing the mark; (3) harm to the

8   senior user if relief is denied; (4) good faith ignorance by the junior user; (5) competition

9   between the senior and junior users; and (6) the extent of harm suffered by the junior user

10  because of the senior user's delay. They claim the applicable factors support a jury question as to

11  the reasonableness of their delay, particularly as to their diligence and Vibram's good faith.

12        Vibram disagrees that this specific test applies here, and argues that it is not materially

13  different than the traditional evaluation of unreasonable delay and prejudice. *See Ormsby v.*

14  *Barrett* Cause No. 07-cv-5305RBL (2008 WL 53119).  It also argues that even if the factors are

15  used, the Bikilas' mark (if they have one) is weak because the Bikilas have never used it in

16  commerce; they were not diligent as evidenced by the four year delay; and have no evidence of

17  harm. It reiterates that it did not act willfully and it is prejudiced by the Bikilas delay.

18        Vibram's good faith is addressed above. The Bikilas' diligence is really a question of

19  when they knew there was an infringement. The Bikilas claim they have been diligent, given

20  limited resources, and they claim that they later discovered additional information about the

21  scope of Vibram's use. But this does not change the undeniable fact that they were aware of the

22  use more than four years prior to filing suit. Under either test, their delay in filing their Lanham

23  Act claim was unreasonable as a matter of law.

24

3.  <u>Prejudice to Vibram</u>

Vibram argues that it was prejudiced by the Bikilas' unreasonable delay, in two relevant ways. First, it claims it has suffered evidentiary prejudice as the result of the delay. The Bikilas concede that they have lost or destroyed evidence (primarily email accounts and evidence related to film licensing) that would be relevant to their claim and Vibram's defense of it. Vibram argues without serious opposition that key witnesses on its own side are no longer employed or no longer have detailed recollections.

Second, and more measurably, Vibram claims that it has suffered economic or expectations-based prejudice from the delay in the form of its continued financial investment in the Bikila shoe, which it has used since 2010.

The Bikilas argue that Vibram's claims of evidentiary prejudice present jury questions, claiming that they have good faith excuses for the lost evidence, and that some of the evidence could be obtained through discovery to third parties. They claim Vibram's lack of access to its own witnesses and their recollections are largely due to their witnesses lack of preparation.

They argue that Vibram's claim of economic prejudice fails because Post admitted that they did not "build a brand" around the Bikila shoe and that its claim that it incurred marketing expenses is insufficient. Vibram points out that the claim it did not suffer expectations-based prejudice based on Post's testimony is flatly inconsistent with their simultaneous claim that "Vibram made tens of millions of dollars selling shoes at the expense of their deceased patriarch." Vibram invested in its trademark, and exploited it. And as they point out, the presumption is that they were prejudiced because the claim was filed outside the limitations period.

Vibram has established the requisite prejudice as a matter of law.

**C.  The Bikilas' State Law Claims are Time-Barred.**

Vibram argues that the Bikilas' state law Personality Rights, CPA, and unjust enrichment are barred by the applicable limitations periods. *See* RCW 4.16.080 (three years for Personality Rights and unjust enrichment claims) and RCW 19.86.120 (four years for CPA claim). These arguments are based on the same accrual date as the Lanham Act/laches claim, discussed above.

The Bikilas claim the discovery rule applies, and that they are entitled to have a jury determine as a factual matter whether they "knew or should have known" the essential elements of their (state law) causes of action. *Citing Green v. A.P.*C., 136 Wash.2d 87 (1998).

But they provide no evidence from which a jury could determine that they did not know that Vibram was seeking to exploit the Bikila name by January 2010, or that they did not know of the essential elements of any of their state law claims until some later date. While the accrual date may be a factual question on disputed facts, it is not a jury question where there is no factual dispute. There is no material question of fact about when the Bikilas knew that Vibram was marketing the Bikila shoe. Each of their state law claims is untimely as a matter of law.

**D.  Standing**

Because laches bars the Bikilas' Lanham Act claim, and the applicable limitations periods bar their state law claims, it need not and therefore does not reach the question of whter they have standing to assert them.

## III. CONCLUSION

.Vibram did not deliberately infringe on the Bikilas' trademark and may thus invoke laches. The Bikilas unreasonably delayed in seeking to enforce their rights, and this unreasonable delay prejudiced Vibram. Vibram's motion for summary judgment the Bikilas Lanham Act claims is GRANTED and those claims are DISMISSED with prejudice.

1    The Bikilas' state law claims are barred by the applicable limitations periods. Vibram's

2    motion for summary judgment on those claims is GRANTED, and they are DISMISSED with

3    prejudice.

4        IT IS SO ORDERED.

5        Dated this 31st day of October, 2016.

6

7        _____
         Ronald B. Leighton

8        United States District Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24